COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Lemons and Senior Judge Cole
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                        OPINION BY
v.          Record No. 0961-98-2    JUDGE DONALD W. LEMONS
                                      SEPTEMBER 29, 1998
RICHARD H. RICE


             FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                   Paul M. Peatross, Jr., Judge

             John H. McLees, Jr., Assistant Attorney
             General (Mark L. Earley, Attorney General, on
             brief), for appellant.

             Andre A. Hakes (Gallo and Hakes, on brief),
             for appellee.


     Richard H. Rice was indicted for carrying a concealed weapon

after having been previously convicted of a felony, a violation

of Code § 18.2-308.2.  By order dated April 23, 1998, the Circuit

Court for the County of Albemarle granted Rice's motion to

suppress the weapon.  The Commonwealth appealed and, for the

reasons stated below, we reverse and remand.

                            BACKGROUND

     On June 2, 1997, Officer Mike Wagner of the Albemarle County

Police Department observed a car driven by Richard H. Rice with

its left headlight out.  Officer Wagner stopped the car and asked

Rice for his driver's license.  Finding no outstanding warrants

for Rice and that his license was valid, Wagner returned to

Rice's car and, while still holding Rice's license, asked if he

could search his vehicle and person.  Rice responded, "[w]hat

for?  You ain't [sic] got no probable cause."  Officer Wagner agreed that he did not have probable cause and affirmatively stated that he would need Rice's permission to search.  Once again, Wagner asked if he could search Rice's person and vehicle.  Rice verbally consented to the search.  Officer Wagner searched his car, and a second officer searched his person.  The second officer found brass knuckles concealed in Rice's pocket.

Rice moved to suppress the evidence recovered in the traffic stop on the basis that the officer's continued possession of Rice's driver's license resulted in an unlawful detention and that any evidence seized pursuant to such detention must be suppressed as the "fruit of the poisonous tree."  The trial court found that the officer did not have "articulable and specific facts that would allow him to detain Rice after [he] checked his license and found it to be valid."  Finding that Rice had been illegally detained and that such detention "tainted" the consent to search, the trial court granted Rice's motion to suppress the brass knuckles found in his pocket.  On appeal, the Commonwealth argues that the officers had reasonable and articulable suspicion to stop the vehicle, that the traffic stop had not concluded at the time consent to search was requested, and that Rice's consent to the search was freely and voluntarily given.

The Commonwealth may seek an interlocutory appeal of a trial court's order which suppresses evidence on the grounds that it has been obtained in violation of the provisions of the Fourth,

Fifth or Sixth Amendments to the Constitution of the United States or Article I, Sections 8, 10 or 11 of the Constitution of Virginia. See Code § 19.2-398. In reviewing the ruling of a trial court on a motion to suppress, we will "consider the evidence in the light most favorable to the prevailing party below, and the decision will not be disturbed unless it is plainly wrong or without evidence to support it." Commonwealth v. Thomas, 23 Va. App. 598, 609, 478 S.E.2d 715, 720 (1996) (citing Lee v. Commonwealth, 18 Va. App. 235, 238, 443 S.E.2d 180, 181 (1994); Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)).

## CONSENT TO THE SEARCH

Rice does not contest the validity of the initial stop of his vehicle; rather, he maintains that the purpose of the stop had concluded by the time the officer requested permission to search his person and his vehicle, thereby rendering his detention unlawful and his consent invalid. The record reveals that the officer determined that no outstanding warrants were on file for Rice and that his driver's license was valid. The officer returned to Rice's vehicle with the driver's license in his hand. At that time, the officer had several options, including issuing a warning and allowing Rice to continue on his way, issuing a summons for operating a motor vehicle with defective equipment, or confiscating the registration card, license plates and any decals of the vehicle pursuant to Code

§ 46.2-1000. While the lawful detention of Rice continued, the officer requested permission to search.

In Bumper v. North Carolina, 391 U.S. 543 (1968), the United States Supreme Court held that the Fourth Amendment right to be free from unreasonable seizures may be waived, orally or in writing, by voluntary consent to a warrantless search of a person, property or premises. Id. at 548. The test of a valid consent search is whether it was "freely and voluntarily given." Id. The burden rests with the Commonwealth to demonstrate the lack of duress. See Lowe v. Commonwealth, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977), cert. denied, 435 U.S. 930 (1978). The question of whether a particular "consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Police need not warn the suspect that he or she has a right to refuse the search, but the suspect's knowledge of his or her right to refuse falls within the totality of the circumstances the court must consider. See id.; see also Ohio v. Robinette, 519 U.S. 33 (1996); Limonja v. Commonwealth, 8 Va. App. 532, 383 S.E.2d 476 (1989). The fact that the defendant is in custody at the time consent is given does not itself invalidate the consent. See Reynolds v. Commonwealth, 9 Va. App. 430, 388 S.E.2d 659 (1990).

In Limonja, the defendants were stopped for failing to pay a

toll at a tollbooth.  The officer obtained the license of the driver and determined that it was valid.  The majority opinion does not indicate whether the license was returned to the driver before permission was requested to search the vehicle.  However, the dissent provides this important fact by observing, as follows:

> Although the documents were in order, [the officer] did not then issue a citation for the traffic violation.  Instead, while retaining their identification, he asked Limonja why she had run the tollgate. Because [the officer] intended to pursue his suspicions that they were drug couriers, he sought and obtained from Limonja and Brooks consent to search the interior of the automobile and trunk.

Limonja, 8 Va. App. at 548, 383 S.E.2d at 486.

Using a "totality of the circumstances" test, the majority in the en banc opinion in Limonja found that the consent was freely and voluntarily given.  The court stated:

> The evidence in this case adequately establishes that Limonja and Brooks voluntarily and intelligently consented to a search of the vehicle.  [The officer] approached the defendants' vehicle and explained to them that he had stopped them because the operator had run the automatic tollbooth.  At that point [the officer] asked for permission to search the vehicle.  Both defendants gave oral consent, first Limonja and then Brooks.  [The officer] had them exit the car and stand to the rear in order to be away from traffic.  The search was not made upon any claim of authority by the police; there was no show of force by the police; there were no threats; the defendants have claimed no mental or emotional infirmity nor does the record disclose any; and there has been no deception as to identity or purpose on behalf of the police.  Furthermore, [the

officer's] failure to inform the defendants
of their fourth amendment protections or
their right to refuse consent does not render
the consent involuntary.

Id. at 540-41, 383 S.E.2d at 480-81.

Rice relies primarily upon Richmond v. Commonwealth, 22 Va. App. 257, 468 S.E.2d 708 (1996); Deer v. Commonwealth, 17 Va. App. 730, 441 S.E.2d 33 (1994); and United States v. Rusher, 966 F.2d 868 (4th Cir. 1992). In Richmond, a Hanover County sheriff's deputy approached Richmond's car parked in a public parking lot behind a gas station with its lights off. The deputy asked Richmond for his driver's license, and Richmond complied. The deputy returned to his patrol car to complete a record check on the license; finding nothing improper, he returned to Richmond's automobile but did not return the license. The deputy continued to interrogate Richmond and asked for his consent to search the automobile. When Richmond told the deputy that he could not search the automobile, the deputy utilized his flashlight to illuminate the interior of the vehicle. Seeing something on the floorboard of the vehicle that appeared to be a device for smoking crack cocaine or marijuana, the deputy asked Richmond to hand it to him. Richmond complied and was arrested.

The Court found that "[t]he initial encounter between the officer and appellant was permissible and did not implicate the Fourth Amendment" because of its consensual nature. Richmond, 22 Va. App. at 261, 468 S.E.2d at 709. However, the Court found that "what began as a consensual encounter quickly became an

- 6 -

investigative detention once the officer received appellant's driver's license and did not return it to him." Id. at 261, 468 S.E.2d at 710 (citing United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir. 1995)).

This case is distinguishable from Richmond in two critical respects: (1) the initial encounter in Richmond was consensual, including the voluntary relinquishment of the driver's license, while the initial encounter with Rice was the result of a valid traffic stop; and, (2) the request to search in Richmond was denied whereas the request to search in this case was granted by Rice.

In Deer, the defendant did not contest the initial stop for a speeding violation. However, he did claim that he was unlawfully detained after the trooper issued him a citation. After the issuance of a citation, the trooper requested the defendant's permission to search his automobile. Deer at first refused to allow the search but gave his consent only after the trooper indicated that he would detain the automobile and call the K-9 unit and indicated that such a procedure could take up to an hour.

The Court held that no reasonable, articulable suspicion of additional criminal activity justified Deer's continued detention after the issuance of the traffic citation. The Commonwealth argued that Deer's consent justified the continued detention; however, the Court noted that the consent was not "freely and

voluntarily given" because the trooper's indication that he would call the K-9 unit without reasonable, articulable suspicion of drug possession amounted to "coercion under the color of lawful authority." Deer, 17 Va. App. at 735, 441 S.E.2d at 36 (citing Bumper, 391 U.S. at 550).

In the matter now before us, the officer clearly indicated to Rice that he could not search without Rice's permission. Upon request for permission to search, Rice responded, "[w]hat for? You ain't [sic] got no probable cause." After the officer agreed with Rice, permission to search was granted. The coercion found unacceptable in Deer is not present in this case.

The defendant cites Rusher for the proposition that the return of the license is the critical aspect of the case at bar. In Rusher, the officer issued a ticket to Flannery, the driver of a truck, for driving without proper registration. The officer returned the driver's license to Flannery and told him he was "free to go." Thereafter, the officer asked whether there were "any weapons, illegal contraband, alcohol or anything of an illegal nature in the vehicle." Rusher, 966 F.2d at 872. Permission to search was granted by Flannery both orally and in writing. The court upheld the trial court's denial of the motion to suppress, finding that the detention of Flannery had terminated and a consensual encounter had begun before the officer questioned him further about contraband and requested permission to search the truck.

Unlike Rusher, the lawful detention of Rice had not terminated before the officer requested permission to search. A policeman has the right to stop and temporarily detain a person to issue him or her a traffic citation. See Limonja, 8 Va. App. at 543, 383 S.E.2d at 482-83.

Nonetheless, Rice maintains that the failure of the officer to return his driver's license tainted the consent to search the vehicle. Certainly, the retention of the license is a factor to consider in determining if Rice's consent was freely and voluntarily given, but it is not dispositive of the question. Rice was stopped for a defective headlight. The officer took Rice's driver's license to run a computer check and determined that Rice was properly licensed and there were no outstanding warrants for his arrest. It is beyond speculation that Rice knew he did not have to consent to the search. His response, "[w]hat for? You ain't [sic] got no probable cause," was followed by the officer's agreement and assurance that he could not search without consent.

Consent was given. The search was not made upon claim of authority; indeed, the opposite is true--the officer disclaimed authority to search without consent. The officer made no show of force and made no threats. Rice has claimed no mental or emotional infirmity. He has made no claim of deception by police. Rice's contention that his consent was tainted by the officer's retention of the driver's license is contrary to Rice's

clear declaration and understanding, confirmed by the officer, that Rice did not have to consent to the search and that his permission would be required before a search could lawfully take place.  The continued detention of Rice was not unlawful. Considering the totality of the circumstances, the Commonwealth has borne its burden of proving by a preponderance of the evidence that Rice's consent to search his person and his vehicle was freely and voluntarily given during a valid detention for a traffic violation.

The trial court's order suppressing the evidence is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>