COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1718-98-3      JUDGE DONALD W. LEMONS
                                       FEBRUARY 23, 1999
JOSHUA ADAM WYATT


          FROM THE CIRCUIT COURT OF PULASKI COUNTY
                     Colin R. Gibb, Judge

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellant.

          Michael J. Barbour (Gilmer, Sadler, Ingram,
          Sutherland & Hutton, on brief), for appellee.


     Joshua Adam Wyatt was charged with possession of cocaine.

By order dated September 2, 1998, the Circuit Court of Pulaski

County granted Wyatt's motion to suppress the evidence found on

his person.  The Commonwealth appealed and, for the reasons

stated below, we reverse and remand.

                         BACKGROUND

     On August 8, 1997, during a routine patrol, Officer A.K.

Anderson of the Pulaski Police Department noticed a vehicle

without functioning license plate ("tag") lights.  He stopped the

vehicle on the side of the road, and approached it from the rear.

He requested and was given a driver's license from the driver,

Joshua Adam Wyatt, and the vehicle registration from the

---

     [*]Pursuant to Code § 17.1-413, recodifying Code § 17-116-010,
this opinion is not designated for publication.

passenger. The passenger told Officer Anderson that he was the owner of the vehicle.

Anderson testified that when he initially stopped the vehicle, he noticed an odor of alcoholic beverages inside the car, but that he had not asked Wyatt to step out of the vehicle. Anderson asked if either of the men had been drinking, and the passenger responded that he had and "[t]hat's why he's [Wyatt's] driving." Anderson then asked Wyatt if he had been drinking, and Wyatt responded, "No sir. That's why I'm driving." Anderson informed the men that he was going to check the license, and to issue a warning to the driver for the defective "tag" light. When he returned to his patrol car, Anderson could not find his warning ticket book. Anderson checked the license and registration and found both to be valid. While Anderson was in his patrol car, Sergeant Eric Todd Montgomery of the Pulaski Police Department arrived at the scene. Montgomery testified that he stood outside the passenger window and shined a flashlight at the passenger.

Anderson then returned to the car at the driver's side. Anderson and Montgomery testified that they did not have any conversation at this time. Anderson testified that it was his intention at that time to "go back up to the driver and release him." However, when Anderson arrived at the window, he noticed that Wyatt was breathing very rapidly. While still holding Wyatt's license and the vehicle registration, Anderson asked Wyatt to step out of the car.

-

At Anderson's request, Wyatt stepped out of the vehicle, and Anderson stepped back a few feet.  As Wyatt walked toward Anderson, Anderson noticed "a faint odor associated with an alcoholic beverage about his person."  Anderson again asked Wyatt if he had been drinking.  Wyatt stated that he had a "sip of beer" earlier in the evening.  Anderson testified that he was going to administer a field sobriety test to Wyatt, when he noticed that Wyatt was holding his right hand in the pocket of his blue jeans.  Anderson asked Wyatt to take his hand out of his pocket, and Wyatt complied.  Anderson explained to Wyatt that he had asked Wyatt to remove his hand from his pocket because Anderson did not know if Wyatt had any weapons on his person.  Anderson then asked Wyatt if he was carrying any weapons.  Wyatt responded, "No, sir."

Anderson then asked Wyatt for permission to pat him down for any weapons.  Wyatt gave his permission for Anderson to pat him down.  As Anderson moved his hand toward Wyatt to begin the pat down, Wyatt brought his hands down in front of him, and stated, "I do have a pocket knife here."  Anderson stated, "Don't pull out no knife at me," and Wyatt pulled his hand back.  Anderson felt the outside of the right pocket, in which he felt what he believed to be a very small pocketknife.

Anderson then patted the left front pants pocket, and felt what he believed to be "about a six to eight inches in length metal object," and asked Wyatt what it was.  Wyatt stuck his left hand into his pocket, and Anderson immediately placed a loose grasp on his wrist, and asked him, "Do you have a weapon on you?"

-

Wyatt responded that he did not.  Anderson testified that Wyatt began breathing rapidly again, and Anderson asked, "Do you have any drugs on you?"  At that point, Wyatt pulled his wrist away from Anderson and fled.  Wyatt was taken to the ground, and began yelling, "Don't hurt me.  Don't hurt me.  I don't have no [sic] weapons.  I've got roaches."  Anderson understood "roaches" to be a street term for hand-rolled marijuana cigarettes.  After searching Wyatt, Anderson found the "roaches," a cigarette pack with a small amount of cocaine and some marijuana inside.  The hard metal item that Anderson felt was a large pair of tweezers of the type that might be used to smoke marijuana.

Wyatt moved to suppress the evidence recovered in the traffic stop arguing that because Anderson held Wyatt's license and the vehicle registration after he had determined that he was only going to issue Wyatt a warning for a traffic violation, Wyatt was illegally detained.  Wyatt argued that because he was held beyond the time necessary to issue him a warning, unless Anderson had objectively reasonable suspicion that Wyatt was engaged in some other type of unlawful conduct, Anderson had no right to detain him.  Finding that Wyatt had been initially lawfully detained, but that the lawful detention had ended prior to Anderson asking him to exit his vehicle, the trial court granted Wyatt's motion to suppress the evidence found on his person.

On appeal, the Commonwealth argues that the trial court erred in concluding that "the lawful detention had ended prior to Officer Anderson asking [Wyatt] to exit the vehicle" and that

-

Anderson could no longer order Wyatt out of the car, citing Pennsylvania v. Mimms, 434 U.S. 106 (1977). The Commonwealth also argues that the trial court erred in concluding that, at the time Anderson asked Wyatt to exit the vehicle, Anderson did not have reasonable articulable suspicion to believe that Wyatt was engaged in criminal activity other than that which prompted the stop.

The Commonwealth may seek an interlocutory appeal of a trial court's order which suppresses evidence on the grounds that it has been obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Sections 8, 10 or 11 of the Constitution of Virginia. See Code § 19.2-398. In reviewing the ruling of a trial court on a motion to suppress, we will "consider the evidence in the light most favorable to the prevailing party below, and the decision will not be disturbed unless it is plainly wrong or without evidence to support it." Commonwealth v. Thomas, 23 Va. App. 598, 609, 478 S.E.2d 715, 720 (1996) (citations omitted).

### OFFICER'S ABILITY TO ORDER DEFENDANT OUT OF THE VEHICLE

Wyatt does not contest the validity of the initial stop of the vehicle; rather, he maintains that Anderson's intention to give him a warning and to let him go concluded the stop. Anderson did not find any outstanding warrants on file for Wyatt's arrest, and the driver's license and vehicle registration were valid. Having determined that he was only going to issue Wyatt a verbal warning for the traffic violation, Anderson

-

returned to the vehicle.  Anderson had not returned Wyatt's driver's license and the vehicle registration.  Anderson testified that when he approached the car, he again smelled the odor of alcoholic beverages, and noticed that Wyatt was breathing very rapidly.  Anderson became concerned that Wyatt may have been drinking, despite his earlier statement that he had not.  He had not given Wyatt a warning for the defective tag light at the time he asked him to step out of the car, nor had he told Wyatt that he was free to leave.

A police officer making a routine traffic stop may order a driver or passenger out of the car for safety reasons, even if the officer has no reason to suspect either person of criminal activity.  Maryland v. Wilson, 519 U.S. 408 (1997); Mimms, 434 U.S. 106; Welshman v. Commonwealth, 28 Va. App. 20, 32, 502 S.E.2d 122, 128 (1998).

In Mimms, the Court stated that the safety considerations of the officer making a valid traffic stop outweighed the personal liberty interest of the driver implicated when he was ordered to step out of the car.  Mimms, 434 U.S. at 110.  The Court explained,

> [w]e think it too plain for argument that the State's proffered justification "the safety of the officer" is both legitimate and weighty.  Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.  And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile.  According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile.  We are aware that not all these assaults occur when

-

issuing traffic summons, but we have before
expressly declined to accept the argument
that traffic violations necessarily involve
less danger to officers than other types of
confrontations.  Indeed, it appears that a
significant percentage of murders of police
officers occurs when the officers are making
traffic stops.

Id. (citations omitted).

When compared to the police officer's "important interest,"
the Court held that the driver's personal liberty interest in
being asked to step out of the car was "de minimis."  Id. at 111.
Therefore, the Court held, "[w]hat is at most a mere
inconvenience cannot prevail when balanced against legitimate
concerns for the officer's safety."  Id.

In Wilson, the United States Supreme Court extended its
holding in Mimms to allow an officer to order passengers out of
the car during a traffic stop.  Wilson, 519 U.S. at 410.  The
Court reasoned,

[d]anger to an officer from a traffic stop is
likely to be greater when there are
passengers in addition to the driver in the
stopped car.  While there is not the same
basis for ordering the passengers out of the
car as there is for ordering the driver out,
the additional intrusion on the passenger is
minimal.  We therefore hold that an officer
making a traffic stop may order passengers to
get out of the car pending completion of the
stop.

Id. at 415.  Based upon the holdings of both Mimms and Wilson, we
recognize the well-established rule that an officer may order any
occupant out of a vehicle pursuant to a valid traffic stop.

Recently, we confronted the issue of when a stop is
completed in Commonwealth v. Rice, 28 Va. App. 374, 504 S.E.2d
877 (1998).  In Rice, a Commonwealth's appeal, we reversed the

-

trial court's decision to grant the defendant's motion to suppress evidence obtained from a search of his person following a valid traffic stop. Rice was stopped because his left headlight was out. The officer asked for and was given Rice's driver's license. After checking his license and finding no outstanding warrants for his arrest, the officer walked back to Rice's car. While still holding Rice's license, the officer asked Rice if he could search his vehicle and person. Rice questioned the officer's basis for the search. The officer agreed that he did not have probable cause to search, and told Rice that he would need Rice's permission. When the officer asked again if he could search Rice's vehicle and person, Rice consented. A second officer found brass knuckles in Rice's pocket. Rice was charged with carrying a concealed weapon after having previously been convicted of a felony, a violation of Code § 18.2-308.2.

While Rice did not contest the validity of his initial detention, he argued that because the officer retained Rice's driver's license he was illegally detained and any evidence seized pursuant to the search was "fruit of the poisonous tree." The Commonwealth disagreed, arguing that the stop was based on reasonable articulable suspicion, that "the traffic stop had not concluded at the time consent to search was requested," and that Rice voluntarily gave his consent. We agreed with the Commonwealth that the detention had not concluded at the time of the officer's request, noting that at the time the officer returned to Rice's vehicle, he had "several options, including

-

issuing a warning and allowing Rice to continue on his way, issuing a summons for operating a motor vehicle with defective equipment, or confiscating the registration card, license plates, and any decals of the vehicle . . . ." Id. at 377, 504 S.E.2d at 879. Our holding in Rice with respect to the duration of the stop is similar to the case now before us. Here, Anderson stopped a vehicle driven by Wyatt for a traffic violation, a defective tag light. Anderson noticed an odor of alcoholic beverages emanating from the inside of the vehicle. He asked Wyatt and the passenger if either had been drinking. The passenger stated that he had been drinking, and both stated that Wyatt had not and was the "designated driver." Anderson told Wyatt that he was going to write him a warning ticket. Anderson then returned to his vehicle to check Wyatt's license and the vehicle registration, which were both valid. Anderson also discovered that he did not have his warning ticket book with him. Anderson walked back to Wyatt's window to give him a verbal warning and to tell him that he was free to leave, when he noticed that Wyatt appeared to be breathing very rapidly. Anderson became suspicious that Wyatt had been drinking, and he again noticed the odor of alcohol inside the car. Without returning Wyatt's license to him or telling him that he was free to go, Anderson asked Wyatt to step out of the car. Once Wyatt was out of the car, Anderson determined that Wyatt had been drinking and upon further questioning, Wyatt revealed that he had previously lied to the officer.

-

In granting Wyatt's motion to suppress, the trial court reasoned, "[w]hen Officer Anderson returned to [Wyatt's] vehicle, his right to further detain [him] ended unless he had an objectively reasonable suspicion that the defendant was engaged in criminal behavior so as to justify additional detention." As we held in Rice, the stop had not concluded at the time Anderson asked Wyatt to step out of the car.

Because we hold that Wyatt was lawfully detained pursuant to a traffic stop at the time of Anderson's request, it is not necessary for us to address whether the officer had reasonable articulable suspicion to believe that Wyatt was engaged in additional criminal activity. Pursuant to Mimms and its progeny, including Wilson, Anderson was entitled to ask Wyatt to step out of his car during the traffic stop. The trial court's order suppressing the evidence is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.