COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Clements
Argued at Alexandria, Virginia


MICHAEL JEROME BOLDEN

MEMORANDUM OPINION[*] BY
v.    Record No. 1951-00-4    JUDGE RUDOLPH BUMGARDNER, III
MAY 22, 2001

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Paul F. Sheridan, Judge

Marvin D. Miller (Law Offices of Marvin D.
Miller, on briefs), for appellant.

Thomas M. McKenna, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


The trial court convicted Michael Jerome Bolden of

transporting marijuana into the Commonwealth with intent to

distribute, Code § 18.2-248.01,[1] and possession of marijuana with

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1]     [Code] § 18.2-248.01.  Transporting
        controlled substances into the Commonwealth;
        penalty. -- Except as authorized in the Drug
        Control Act (§ 54.1-3400 et seq.) it is
        unlawful for any person to transport into
        the Commonwealth by any means with intent to
        sell or distribute . . . five or more pounds
        of marijuana.  A violation of this section
        shall constitute a separate and distinct
        felony.  Upon conviction, the person shall
        be sentenced to not less than five years nor
        more than forty years imprisonment, three
        years of which shall be a minimum, mandatory

intent to distribute, Code § 18.2-248.[2]  He contends the trial

court erred (1) in ruling the possession of marijuana was not a

lesser-included offense of transporting marijuana and (2) in

denying his motion to suppress the evidence.  Because the

defendant pled guilty to transporting marijuana into the

Commonwealth, we only address these arguments as they apply to

the conviction for possession of marijuana.  Finding the trial

court did not err, we affirm.

The Commonwealth obtained separate indictments for

transporting marijuana into the Commonwealth and possession of

marijuana.  The trial court denied the defendant's motion to

suppress and convicted him of transporting marijuana on his

guilty plea to that charge.  The trial court continued the

possession charge to a later date for trial on a plea of not

guilty.  The defendant subsequently moved to dismiss arguing the

possession charge was a lesser-included offense of the

transportation charge on which he had been convicted.  The trial

court denied the motion and convicted the defendant on the

second charge.

_____

term of imprisonment, and a fine not to
exceed $1,000,000.

[2] Code § 18.2-248(A) provides that "it shall be unlawful for
any person to . . . possess with intent to manufacture, sell,
give or distribute a controlled substance . . . ."  Where the
quantity of marijuana, is "[m]ore than five pounds . . . [the
defendant] is guilty of a felony punishable by imprisonment of
not less than five nor more than thirty years."  Code
§ 18.2-248.1.

-

First, we consider whether possessing with intent to distribute is a lesser-included offense of transporting into the Commonwealth. The doctrine of double jeopardy protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after a conviction, and (3) multiple punishments in a single trial for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). However, "we have found it unnecessary to apply Blockburger [v. United States, 284 U.S. 299, 304 (1932)], where the General Assembly has 'clearly indicated its intent to impose multiple punishments.'" Fitzgerald v. Commonwealth, 223 Va. 615, 635, 292 S.E.2d 798, 810 (1982), cert. denied, 459 U.S. 1228 (1983) (citation omitted).

Code § 18.2-248.01, transporting drugs into the Commonwealth, declares: "A violation of this section shall constitute a separate and distinct felony." The defendant contends that language does not reflect an intent by the General Assembly to impose a separate punishment. However, the language is clear and unambiguous, and adopting the defendant's interpretation renders it meaningless. See Sims Wholesale Co., Inc. v. Brown-Forman Corp., 251 Va. 398, 405, 468 S.E.2d 905, 909 (1996) ("Every part of a statute is presumed to have some effect and no part will be treated as meaningless unless absolutely necessary.").

-

Code § 18.2-248 links the verb "possess" with the related verbs "manufacture, sell, give, distribute" in a list of proscribed acts. When proscribing the act of "transporting," the General Assembly delineated a separate offense and designated it with a unique code number, Code § 18.2-248.01. By so doing, "transporting" was not listed with the series of verbs in Code § 18.2-248, "manufacture, sell, give, distribute, possess," that would have limited and defined it under standard concepts of construction such as ejusdem generis.

In common usage, transporting is not synonymous with possessing. Transporting does not necessarily require possessing. The legislature ascribed "transporting" its broadest meaning by employing the phrase "by any means" to modify the term. That phrase appears commonly throughout the Code of Virginia when the General Assembly defines an action to encompass any device or stratagem by which the human mind could conceive to accomplish it. Transporting by any means would encompass something more than simple possession, or simply personally moving the drug from point to point.

We also note two final differences between the two code sections. The statutes require different amounts of marijuana for conviction and carry different penalties. The General Assembly clearly indicated it intended to impose multiple punishments for possession of marijuana and transporting it into the Commonwealth.

-

Next, we consider whether the trial court erred in denying the defendant's motion to suppress.  The trial court determined that the defendant's initial encounter with the police was consensual, that he was not detained, and that his consent to search was voluntary.  At trial the defendant contended that under the totality of the circumstances the encounter was not a consensual encounter but a seizure.  He also contended his consent to search was involuntary and his will was overborne.

"A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  United States v. Mendenhall, 446 U.S. 544, 554 (1980).  The determination of seizure is objective, whether a reasonable person would have felt restrained.

Consent to a search must be freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973).  "[T]he determination of consent to search is subjective." United States v. Wilson, 895 F.2d 168, 171 (4th Cir. 1990).  The determination of voluntariness of consent is subjective, whether this defendant gave his consent freely and voluntarily.

Both decisions are reviewed de novo on appeal, but historical facts are entitled to special consideration.  Whether a defendant is seized in violation of the Fourth Amendment is a question that is reviewed de novo on appeal.  Mendenhall, 446

-

U.S. at 551 n.5.  We "should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Ornelas v. United States, 517 U.S. 690, 699 (1996).  Voluntariness is ultimately a legal rather than a factual question.  Miller v. Fenton, 474 U.S. 104, 110 (1985).  Subsidiary factual findings, however, are entitled to a presumption of correctness.  Id. at 112.  Both issues are determined under the totality of the circumstances.

Viewing the evidence in the light most favorable to the Commonwealth, Officer Garrett Daniel Polowy began observing and tracking a gold SUV at a stoplight at approximately 1:15 p.m. on December 29, 1999.  When it parked, he pulled in front of the entrance to an Econo Lodge and continued observing through shrubbery that separated him from the SUV.  When the defendant came through the shrubbery and emerged next to the police cruiser, Polowy exited the car and approached.  He asked in a normal, friendly tone if the defendant noticed the gold car or if he knew who was in it.  The defendant denied knowledge of the gold car.  The defendant indicated he was investigating a store on the other side of the shrubs and stated he was a guest at the hotel.  They walked toward the hotel.

Within ten seconds of entering the small lobby, the defendant received a telephone call.  He talked for no more than twenty seconds, then sat in the only chair.  Polowy confirmed

-

with the desk clerk that the defendant had been a guest in room 313 but had checked out.  Polowy radioed Corporal Dean Edward Matthews to come to the hotel.  Matthews arrived within two minutes.

After Polowy explained the situation, Matthews spoke with the clerk who advised him that the defendant had checked out at 5:00 a.m.  Matthews then approached the defendant, still seated, and started talking with him.  The defendant explained that he had gotten lost the previous night, spent the night in the motel, and was waiting for his cousin to come get him.  While Matthews talked to the defendant, a third officer arrived, and the clerk received a second phone call for the defendant.  Polowy walked over, took the phone, and asked whom the caller wanted.  The caller asked for Brown in room 313 and hung up when Polowy asked who was calling.

Matthews asked the defendant for identification, and he voluntarily provided it.  Matthews took several minutes to determine it "checked out with everything" and then returned the identification.  Matthews then asked for consent to search the defendant in the lobby.  The defendant consented.  Polowy searched him and found nothing illegal.

The hotel manager suggested the officers move to her office away from the lobby.  Instead of going to the office, which Matthews knew was in the basement, he suggested, "How about if we just step out into the parking lot?"  Matthews turned and

-

walked out, and the defendant "came with us." The conversation resumed outside.

The defendant said he was from New Mexico and repeated his explanation that he had gotten lost and was now waiting for his cousin. Matthews asked if the defendant had any luggage, and the defendant, mentioning a car for the first time, said it was in his car. The defendant pointed to a car, and they walked to it.

Matthews saw a green bag on the rear seat. The defendant admitted it was his but denied it contained drugs or weapons. When Matthews asked if he could search the green bag, the defendant said nothing, but "took a deep breath and put his head straight down to the ground." Matthews did not open the door or search the bag. He asked if there was anything else in the car, and the defendant told him he had a suitcase in the trunk. He denied it contained drugs or weapons.

Matthews asked if they could open the trunk. The defendant took out his keys and leaned awkwardly behind the car to open it because the trunk extended over a three-to-four foot drop. When the defendant opened the trunk, Matthews saw only a suitcase. He asked the defendant if he could take it out and search it. The defendant replied "that he would rather it stay in the trunk."

The defendant volunteered to move the car because they were unable to search the suitcase while the trunk protruded over the

-

ledge.  The defendant walked to the driver's door, opened it, slid in, started the engine, and "pulled [the car] up a little bit."  The trunk was then flush with the drop-off.  Matthews asked if the defendant would pull up a bit more, and he did.

Matthews walked past the defendant toward the suitcase and asked if he could search it.  The defendant "just took a deep breath, and he put his head down."  Matthews testified, "because of his behavior, his nervousness, . . . , I felt like there was probably something illegal in the car."  Matthews then advised the defendant that "if he had anything, I would prefer him just to give it to me than for me to have to search."  The defendant, who already had his head down, pointed his head towards the suitcase and said, "you can look."

Matthews again advised the defendant he'd rather the defendant give him whatever he had than to search for it.  The defendant just "nodded at the suitcase again with his head and said, Go ahead and look, man."  Upon opening the suitcase, Matthews observed some layers of fabric softener on top of some clothes.  Underneath the clothes, he "could see a taped-up bundle, brick."  It contained fifty pounds of marijuana worth about $45,000.

The defendant testified that Polowy "directed" him to have a seat in the lobby and went to the front desk when they entered the hotel.  He did not believe he was free to go.  He testified they "directed me to go outside," and "directed me to my car."

-

The defendant said he was probably going to leave if the officer had not directed him to stay.  The trial court rejected this version specifically.

Police officers are free to approach individuals and ask questions.  "The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'"  United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976).  To characterize all such encounters as seizures, "'would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices.'"  Parker v. Commonwealth, 255 Va. 96, 101, 496 S.E.2d 47, 50 (1998) (asking questions is an effective law enforcement tool) (quoting Mendenhall, 446 U.S. at 554).

The defendant was headed to the lobby because he was waiting for a phone call.  Officer Polowy approached him and started asking questions.  A citizen's "voluntarily responding to a police request, . . . , does not negate 'the consensual nature of the response.'"  Grinton v. Commonwealth, 14 Va. App. 846, 849, 419 S.E.2d 860, 862 (1992) (citation omitted).  They continued into the lobby.  As long as the citizen's participation is voluntary, the encounter remains consensual.  See Richards v. Commonwealth, 8 Va. App. 612, 615, 383 S.E.2d 268, 270 (1989) (no Fourth Amendment violation when police

-

officers approached defendant standing outside an airport terminal and asked to see his airline ticket and identification). The defendant was where he wanted to be, waiting to meet his cousin.

Three uniformed officers eventually arrived at the hotel. They talked in conversational tones, never surrounded or touched the defendant, and never pulled their guns. They did not direct him to do anything, did not request that he stay, or restrain his movement in any way. "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 553-54.

Corporal Matthews asked if the defendant had identification and returned it after checking it. "[A] police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure." McCain v. Commonwealth, ___ Va. ___, ___, ___ S.E.2d ___, ___ (Record No. 001989, April 20, 2001) (citations omitted). Even retention of the license would only be one factor to be considered in the totality of the circumstances. Commonwealth v. Rice, 28 Va. App. 374, 381-82, 504 S.E.2d 877, 881 (1998).

-

The total encounter took 25 to 30 minutes.  The defendant was a mature, knowledgeable person who exhibited a strong presence and obvious intellect.  He was free to go; he knew he had a choice.  "A seizure does not occur in the absence of physical force used by a law enforcement officer or a defendant's submission to an officer's assertion of authority." McCain, ___ Va. at ___, ___ S.E.2d at ___ (citations omitted). The police did not assert authority; the defendant did not submit to it.

In determining if this defendant consented to the search voluntarily, the trial court made specific observations about the defendant's demeanor, character, and intellect exhibited at trial and while testifying.  Those traits illuminated the crucial events surrounding the consent.  The trial court portrayed the "impression the defendant makes on me:"

> He maintained a controlled demeanor
> . . . has a strong presence about him and
> obvious intelligence.
>
> *     *     *     *     *     *     *
>
> He pondered, reflected, thought about
> it, implying that he didn't have to let them
> do this, implying that he knew he had a
> choice.
>
> *     *     *     *     *     *     *
>
> The defendant's state of mind demeanor,
> all fit into reasonably evaluating what a
> person less mature, perhaps less aware of
> his rights would have done. . . .

-

And very important is the fact that he elects to open the car.  He elects to move it.  He elects to facilitate access to the trunk.  He is not coerced.  He is not without a freedom of choice.

His actions speak along with his eventual consent to search that he knew what he was doing.

I find that he knew he didn't have to consent and . . . made an election to let them search.

　*　　*　　*　　*　　*　　*　　*

He knew what he was doing.

The record supports those findings.  The decision of the trial judge will not be disturbed unless plainly wrong.  Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).  The Commonwealth met its burden to prove that consent was in fact freely and voluntarily given.  Schneckloth, 412 U.S. at 222, 248-49.

The appellate court is required to give deference to the factual finding of the trial court but is to determine independently whether the constitutional requirements are met.  McCain, ___ Va. at ___, ___ S.E.2d at ___.  Under the totality of the circumstances, a reasonable man would not have felt restrained; there was no seizure.  Under those circumstances, this defendant gave consent freely and voluntarily; there was consent to search.  Accordingly, the defendant's conviction is affirmed.

Affirmed.

-