COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge Annunziata and
Senior Judge Overton
Argued by teleconference


TREVOR TYRON ADDERLY

MEMORANDUM OPINION[*] BY
v.    Record No. 0785-01-1    JUDGE ROSEMARIE ANNUNZIATA
AUGUST 27, 2002
COMMONEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John C. Morrison, Jr., Judge

William P. Robinson, Jr. (Robinson, Neeley &
Anderson, on brief), for appellant.

Marla Graff Decker, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


Trevor Tyron Adderly was indicted by a grand jury alleging

that he possessed more than one-half ounce, but less than five

pounds of marijuana with intent to distribute, in violation of

Code § 18.2-248.1.  Adderly moved to suppress evidence found

during the search of his truck.  The trial court denied the

motion, and Adderly pled guilty to the charge, conditioned upon

his ability to appeal that denial.  The trial court convicted

Adderly and sentenced him to ten years in prison, with eight

years suspended.  Adderly now appeals the trial court's denial

of his motion to suppress.  For the reasons that follow, we

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

affirm the trial court's decision to deny his motion to suppress and affirm his conviction.

## Background

On August 12, 1998, Norfolk Police Investigator Todd Sterling and two other plain-clothed officers stopped a vehicle on Military Highway for a traffic violation. Sterling was working with the Vice and Narcotics Division at the time.

The driver of the vehicle, who later proved to be Jermaine Adderly, produced several different "identification-type documents," in response to a request for his license. The documents listed 1426 Picadilly Street, Apartment A, as the holder's address. The officers concluded they "couldn't really charge [the driver] until [they] found his true identity," and went to the Picadilly Street address to verify the driver's name and address.

When they arrived, Sterling noticed a 1996 "Chevy Tahoe" parked at the apartment. He ran a DMV check on the license plates, but they "didn't come back to anything." At Sterling's request, a uniformed officer went to the door of the apartment.

Trevor Tyron Adderly, the defendant, answered the door, and Sterling and the other uniformed officer walked up to the doorway. Sterling detected the odor of marijuana coming from the apartment. He asked Adderly if the truck in the front yard belonged to him, and Adderly responded that it did. When Sterling advised Adderly that the license plates did not "come

-

back to his vehicle," Adderly responded that he did not know why that would be the case.

Sterling continued his conversation with Adderly, advising him that Jermaine Adderly had been arrested and some documents in his possession linked him to the 1426 Picadilly address. When Sterling explained that he was attempting to verify Jermaine Adderly's identity so a summons could be issued, Adderly acknowledged that Jermaine lived at the address.

Sterling asked Adderly if there were any guns or drugs in the apartment. Adderly responded that he had a gun and a permit, and directed Sterling to the bedroom to show it to him. After examining the gun and permit, Sterling saw an ashtray that contained marijuana. When asked, Adderly stated the drugs belonged to him, explaining he had just finished smoking a joint. After advising Adderly of his Miranda rights, Sterling asked him if he could search the apartment for drugs. To alleviate Adderly's expressed concern about the absence of a search warrant, Sterling told him that he would not charge him with any drug offense based on drugs he might find in the apartment and that he would simply take the contraband and "voucher it." Accepting the terms proffered, Adderly agreed to the search of the apartment. Sterling found evidence of drug offenses in the apartment, but assured Adderly he would not bring any charges based on that evidence.

-

He then asked if there were any drugs or guns in the "Chevy Tahoe."  Adderly responded in the negative.  Sterling asked if he could search the truck, and Adderly responded in the affirmative and gave Sterling the keys.  In the truck, Sterling found 70 plastic baggies of marijuana.  Adderly denied the drugs belonged to him, and denied knowledge that they were in his truck.  Adderly was arrested based on the marijuana found in the truck.

## Analysis

Adderly contends the trial court erred in denying his motion to suppress the evidence found in his truck on the ground that his consent to the search of the truck was tainted by the events preceding his consent.  For the reasons that follow, we disagree and affirm the decision of the trial court.

Subject to several well established exceptions, the Fourth Amendment prohibits warrantless searches of any place or thing in which a person has a reasonable expectation of privacy.  Mincey v. Arizona, 437 U.S. 385, 390 (1978).  However, searches made by the police pursuant to a valid consent do not implicate the Fourth Amendment.  Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (en banc).

When relying upon consent as the justification for a search, the Commonwealth must prove, given the totality of the circumstances, that the consent was freely and voluntarily

-

given.  Bumper v. North Carolina, 391 U.S. 543, 548 (1968); Hairston v. Commonwealth, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975); Commonwealth v. Rice, 28 Va. App. 374, 378, 504 S.E.2d 877, 879 (1998).  "The voluntariness of the consent is a question of fact to be determined by the trial court and must be accepted on appeal unless clearly erroneous."  Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989) (en banc).  As such, the trial court's resolution of those issues will not be reversed on appeal unless we find that the decision was clearly erroneous.  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (noting that appellate courts are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and [this Court] give[s] due weight to the inferences drawn from those facts by resident judges and local law enforcement officers"); Satchell v. Commonwealth 20 Va. App. 641, 648, 640 S.E.2d 253, 256 (1995) (en banc) (great deference is given the "peculiar fact finding capability of the trial court" since it is "not limited to the stark, written record," but "has before it the living witnesses and can observe their demeanors and inflections").  Therefore, Adderly must demonstrate on appeal "that the [trial court's] denial of [his] motion to suppress constitute[d] reversible error.  Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).

-

Adderly contends that the police acted unlawfully before obtaining his consent and deceived him as to their purpose. See Commonwealth v. Ealy, 12 Va. App. 744, 757, 407 S.E.2d 681, 689 (1991) (upholding suppression of evidence obtained pursuant to voluntary consent because it was tainted by previous unlawful searches (citation omitted)); Limonja, 8 Va. App. at 540, 383 S.E.2d at 481 (noting that deception may invalidate a consent to search). Specifically, Adderly claims that his express consent was not freely and voluntarily given because: (1) the police did not have a "legitimate basis" for appearing at his door; (2) Sterling's questions about the possible presence of guns or drugs in the apartment were improper; and (3) Sterling "bribed" Adderly with the promise that any contraband found in the search of the residence would not be used as a basis for criminal charges. The evidence admitted at both the trial and suppression hearings, viewed in the light most favorable to the Commonwealth, Greene v. Commonwealth 17 Va. App. 606, 607, 440 S.E.2d 138, 139 (1994), does not support these contentions.[1]

---

[1] Although there is evidence to the contrary in the record, we need not consider it. See McCary v. Commonwealth, 36 Va. App. 27, 35, 548 S.E.2d 239, 243 (2001) (noting that it is the trial court's role on a motion to suppress to evaluate and resolve conflicts in the evidence). The trial court, in concluding that Adderly voluntarily consented to the search, credited the police officer's account of the events leading up to and including Adderly's consent to the search of his truck and resolved the conflicts between Sterling's testimony and that of Adderly in favor of the former.

First, we find that Sterling did not act unlawfully before obtaining Adderly's consent to search his truck.  The police may approach a citizen's door and knock to seek his attention.  See Shaver v. Commonwealth, 30 Va. App. 789, 796, 520 S.E.2d 393, 396-97 (1999).  Moreover, the record shows that the police went to his apartment to verify the identity and address of an individual whom they had stopped for a traffic infraction because the suspect had produced one piece of identification that listed Adderly's apartment as his address.  The officers needed the correct name and address to issue summonses and went to the Adderlys' residence for that express purpose.  Indeed, during the visit, Sterling verified with Adderly that the traffic offender lived at that address.  Thus, the initial encounter between Adderly and the police was consensual.

Second, Sterling's questions were proper and did not turn the consensual encounter into a seizure.  See Florida v. Bostick, 501 U.S. 429, 434 (1991).  Because Sterling smelled the odor of marijuana coming from the defendant's apartment, he asked Adderly if there were guns or drugs in the apartment.  Adderly voluntarily responded that he had a gun in his bedroom for which he had a permit.  He then asked Sterling if he wanted to see it.  Sterling accepted the offer and followed Adderly to a bedroom in the rear of the apartment.  After Sterling found the evidence of drugs in Adderly's apartment, he asked Adderly whether there were any drugs or guns inside the truck.  Adderly

-

responded that there was not.  Adderly thus consensually engaged in the encounter.

Third, Sterling's promise that he would not charge the defendant with any drug offense based on drugs he found in the apartment, pursuant to Adderly's consent, did not deceive Adderly.  Sterling honored his promise and did not charge Adderly with any crimes based on the $8,615, two kilos of marijuana, 86 plastic baggies of marijuana, two additional weapons, and the digital scale he found in Adderly's apartment. Adderly was charged based on evidence found during the search of his truck, about which Sterling had made no promises.

In short, Adderly's contentions are without merit. Moreover, the totality of the circumstances demonstrates that Adderly's consent to the search of his truck was voluntary.  See Reynolds v. Commonwealth, 9 Va. App. 430, 439, 388 S.E.2d 659, 665 (1990) (noting that whether an accused's consent to search was voluntary requires a review of the totality of the circumstances).  As noted above, the conversation between the officer and Adderly prior to his consent to search his truck was not coercive.  In addition, Sterling was open and honest with Adderly throughout the encounter.  He told Adderly he did not have a search warrant.  He said he could apply for one, but he was not sure that he could get one.  He told Adderly he would not charge him with any drug crimes based on evidence found during the search of his apartment, and he remained true to his

-

word.  He never lied to or deceived Adderly.  Moreover, when the officer asked him whether he could search the truck, he said, "[g]o ahead," gave the officer the keys, and added that there was "nothing in there."  Given these circumstances, the trial court correctly found that the officer's actions were objectively reasonable and that the defendant freely and voluntarily consented to the search of the truck.  See Ohio v. Robinette, 519 U.S. 33, 39 (1996) (holding that the voluntariness of consent is determined by an objective test).  Accordingly, we affirm the trial court's decision to deny Adderly's motion to suppress the evidence found in his truck.

Affirmed.