## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Lonie Frizzell Cooper

December 6, 2004

Case No. (Criminal) 03-453

BY JUDGE EDWARD L. HOGSHIRE

Lonie Frizzell Cooper is charged with one count of possession of a controlled substance with intent to distribute, in violation of Virginia Code § 18.2-248, and one count of possession of marijuana, in violation of Virginia Code § 18.2-250.1. Defendant filed a motion to suppress the marijuana and cocaine discovered when his vehicle was stopped on the grounds that the stop of the vehicle and the detention and arrest were conducted in violation of the defendant's constitutional rights. Based on the foregoing reasons, this motion is granted.

### Statement of Facts

On or about 1:30 a.m., September 5, 2003, City of Charlottesville Police Sergeant Brian O'Donnell initiated a routine traffic stop on Fifth Street Extended upon noticing a car that did not have a City or a County tax decal. Transcript of November 17, 2004, hearing at 4, 5 (hereinafter, Tr. at *). He was accompanied in the marked police car that night by a plain clothes officer, Officer Clifford Goodman. Tr. at 7. O'Donnell asked the driver, Lonie Cooper, who was nineteen years old and alone in the car at the time of the encounter, for his driver's license and registration. Tr. at 7. The license and registration were valid, although the registration was a handwritten, temporary registration issued for new vehicles. Tr. at 7. Officer O'Donnell asked the Defendant to step out of

the vehicle so that he could explain that the owner of the car needed a county sticker. Tr. at 7, 9. O'Donnell asserted that he did so because it was dark and cars were traveling along the road at a high rate of speed; he said he was concerned for his safety. The officer further opined that the cars were close enough to the road that the Defendant's car door could have been clipped had he opened the door. Tr. at 19. As O'Donnell spoke with the Defendant, Goodman stood about eight to ten feet away but close enough to hear the conversation. Tr. at 9, 31. Although Goodman was not in his police uniform, his gun and his badge were clearly displayed. Tr. at 30. After explaining the situation, Officer O'Donnell returned Cooper's driver's license and registration. Tr. at 10. O'Donnell immediately asked the Defendant where he was coming from, and the Defendant indicated that he was coming from the Sixth Street apartments. Tr. at 10. At no point did O'Donnell ask Cooper if he would mind speaking further with the officers. Tr. at 23. Further, the Defendant had not done anything illegal. Tr. at 23. Next, O'Donnell asked Cooper if he had any guns or drugs; Cooper responded that he did not. Tr. at 10. The officer then asked if he could search the Defendant, who consented to the search. Tr. at 10. As O'Donnell started to reach for the Defendant's front pocket, Cooper told the Officer that he might have some marijuana in his pocket. Tr. at 11. Officer O'Donnell found a bag of marijuana, two cell phones, and $348, primarily in $20 bills,[1] on the defendant's person. Tr. at 11. Based on his experience, O'Donnell suspected Cooper to be a drug dealer and detained him. Tr. at 12. O'Donnell searched the defendant's car and uncovered a bag filled with a powdery white substance in the center console. Tr. at 13. The defendant was subsequently arrested.

### Question Presented

Would a reasonable person in the Defendant's circumstances have believed that after the officer's explanation regarding the county sticker, the traffic stop was over, and he was free to leave, thus rendering the consent to search truly voluntary?

---

[1] The Commonwealth notes that this is the denomination typically used to purchase small rocks of crack cocaine.

*Analysis*

Under familiar principles, if the marijuana and cocaine were procured in an illegal search and seizure, then both should be suppressed under the exclusionary rule. The Defendant asserts that Officer O'Donnell exceeded the permissible scope of the initial detention when he continued to detain the driver after his registration and license status was cleared. Thus, the Defendant argues, the subsequent arrest was tainted by the illegal detention; therefore the fruits of that violation should be suppressed.

The Fourth Amendment protects citizens from unreasonable searches and seizures. Although law enforcement officers may engage in consensual encounters with citizens, the Supreme Court has limited these encounters to situations in which a "reasonable person would feel free to disregard police and go about his business." *Reittinger v. Commonwealth*, 260 Va. 232, 236 (2000) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (citations omitted)). If a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 558-59 (1980). In deciding whether the encounter was consensual, a court must look at the totality of circumstances. *Id.* at 554. The Court may consider the threatening presence of a number of police officers, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he was free to leave. *See Ohio v. Robinette*, 519 U.S. 33, 36 (1996); *Flordia v. Royer*, 460 U.S. 491, 504 (1983); *Mendenhall*, 446 U.S. at 554.

Defendant relies primarily on *Harris v. Commonwealth*, 266 Va. 28 (2003). In that case, the Court found that, because a driver was illegally detained by police after a traffic stop and identity check were completed, evidence of stolen materials obtained in a search of his truck should be suppressed. The police officer told the defendant to get out of his truck. *Id.* at 30. Upon being questioned, the defendant gave the police officer his Social Security card. *Id.* After an identity check had been completed and the Social Security card had been returned, the police officer asked the defendant whether he had anything illegal in his truck and the defendant replied that he did not. *Id.* at 31. The officer then asked the defendant if he could search the truck and the defendant consented. *Id.* The defendant was never informed that he was free to leave. *Id.* The officer later testified that he had no reasonable, articulable suspicion that the defendant had done

anything illegal. *Id*. The Virginia Supreme Court declared that given that Harris had been stopped for a traffic violation, that he had not be informed that he was no longer the subject of a detention, and that he remained in the presence of two armed, uniformed police officers and two patrol vehicles, a reasonable person would not have known that the investigation had terminated and thus would not have felt free to disregard the officer's questions and leave. *Id*. at 33.

The Virginia Supreme Court also declared that evidence obtained from a search which transpired immediately after a routine traffic stop should be suppressed in *Reittinger v. Commonwealth*, 260 Va. at 237. In that case, the defendant had been stopped in a rural area in the nighttime, he was in the presence of two armed deputies, and he did not respond when one of the deputies asked him to waive his Fourth Amendment right and consent to a search of the vehicle. *Id*. at 236-37. Further, the deputy "had no reasonable and articulable suspicion of criminal activity" on the part of the defendant. *Id*. at 237. The Court concluded that a reasonable person would not have considered that he was free to disregard the officers and drive away, and thus the evidence was seized in violation of the Fourth Amendment. *Id*.

These cases are in contrast with *Dickerson v. Commonwealth*, 266 Va. 14 (2003). In that case, the defendant was also detained for a routine traffic stop and exited his car. *Id*. at 16. However, in *Dickerson*, the police officer explicitly told the defendant that he was free to leave. *Id*. Further, the defendant returned to his car, opened the driver's side door and began to enter the vehicle. *Id*. Only then did the police officer begin to question the defendant as to whether he was in possession of illegal weapons or drugs. *Id*. Additionally, the defendant voluntarily admitted to smoking marijuana and having "some roaches in the ashtray" before the police officer asked to search his vehicle.

The prosecution cites *Commonwealth v. Rice*, 28 Va. App. 374 (1998), to support its argument that the defendant voluntarily gave his consent to the search. However, the present case is distinguishable from *Rice*. In that case, when the police officer first asked to search the defendant's vehicle, the defendant replied that the officer had no probable cause. *Id*. at 376. The officer agreed and affirmatively stated that he needed the defendant's permission to search the car. *Id*. The police officer then asked to search the car again and the defendant consented. *Id*. In *Rice*, the defendant knew that the police could not search the car without his permission based on his conversation with the police officer, yet he chose to allow the police to search his car anyway. Under those

circumstances, the defendant's consent was voluntary. However, the facts of the present case are not analogous to those in *Rice*.

The present case is very similar to *Harris*. Here, during the course of a routine traffic stop, the Defendant gave Officer O'Donnell his driver's license and registration; after confirming his identity, the officer asked Mr. Cooper to step out of his car. O'Donnell claimed that he did so for safety reasons; however, the officer stated that Defendant's car was pulled so close to the road that his car door could have been clipped as he opened it. Cooper was the only passenger in the car, and thus O'Donnell could have spoken with him through the passenger side window rather than requiring that Cooper put himself in danger by exiting the vehicle. This is particularly true in light of the fact that O'Donnell simply wanted to tell the Defendant that the owner of the car needed a county decal. After Cooper got out of his car, O'Donnell returned his driver's license and registration. However, Officer O'Donnell never informed Mr. Cooper that he was free to leave, nor did he inquire as to whether Mr. Cooper would mind talking to him. Rather, the officer asked to search the Defendant immediately upon returning his driver's license despite the fact that he had no reasonable articulable suspicion that the Defendant had done anything illegal. Unlike the defendant in *Harris*, Mr. Cooper was not in the presence of two *uniformed* police officers and two patrol vehicles with flashing lights. However, a second, plain clothes officer was present during the encounter, and that officer's badge and weapon were displayed on his person. Given that it was 1:30 a.m., that the Defendant was nineteen years old, that the Defendant had just been stopped for a traffic violation, that he was asked to step out of his car, that he was never explicitly informed that he was no longer the subject of a detention, and that he was in the presence of two armed police officers, a reasonable person would not have known that he was no longer being detained, was free to leave, and could refuse consent to search. Further, at that point in time, Sergeant O'Donnell had no reasonable suspicion of criminal activity. Thus, the search was conducted in violation of the Defendant's Fourth Amendment rights.

Under these facts, the motion to suppress will be granted.