COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Willis and Fitzpatrick
Argued by Teleconference Call


COMMONWEALTH OF VIRGINIA
                                          OPINION BY
v.      Record No. 1663-96-4     JUDGE JOHANNA L. FITZPATRICK
                                       DECEMBER 17, 1996
MICHAEL S. THOMAS


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

Richard B. Smith, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
briefs), for appellant.

James C. Love, IV (Thierry Barston; Love,
Keilsgard & Associates, P.C., on brief), for
appellee.


Michael S. Thomas (defendant) was indicted for possession of

Phencyclidine (PCP), possession with intent to distribute PCP,

possession of a firearm while possessing PCP, and possession of a

firearm after having been convicted of a felony.  Defendant filed

a motion to suppress the evidence recovered in a traffic stop on

the ground that the police had no basis to detain him after they

issued a traffic citation.  The trial court granted the

suppression motion in part, and the Commonwealth appeals that

ruling pursuant to Code § 19.2-398(2).  On appeal, the

Commonwealth argues that the officers had reasonable and

articulable suspicion to stop the vehicle, and the officers'

continued detention of defendant was justified under Terry v.

Ohio, 392 U.S. 1 (1968).[1]  We agree with the Commonwealth and

_____

[1]Upon granting the Commonwealth's appeal, we raised the

reverse the trial court's ruling.

## I. BACKGROUND

On August 24, 1995 at approximately 11:00 p.m., Officer Michael Buracker (Buracker) of the Leesburg Police Department was on routine patrol. After being advised by radio of a maroon-colored vehicle, with a low front-end suspension system, he located and followed a 1964 Chevrolet. After the vehicle pulled off the road, defendant stepped out of the driver's side and locked his door; two other men exited the car from the passenger's side and locked their doors. The three men "started walking back to [the] police cruiser but away from it." Buracker yelled for them to stop, radioed for backup, and requested K-9 assistance. Once out of his cruiser, Buracker approached the defendant and requested his driver's license and registration. Defendant did not have his license, but retrieved the registration from the car's glove compartment and once again locked the car door.

Buracker measured the distance from the bumper of the car to the ground and found it to be seven inches lower than required by Code § 46.2-1063. Buracker issued a ticket for improper suspension pursuant to Code § 46.2-1063 and asked defendant if he could search the vehicle. Defendant refused. When Buracker gave

additional issues of (1) whether this Court may review a prosecutor's certification under Code § 19.2-398(2), and (2) if so, whether the record establishes that the evidence suppressed is "essential to the prosecution" as described by Code § 19.2-398(2).

2

defendant the citation, he "detected an odor of alcohol emitting from his person" and subsequently conducted field sobriety tests. Defendant performed the tests adequately.

"Approximately a minute, minute and a half after the traffic stop" and before Buracker issued the traffic citation, Officer Scott Warner (Warner) arrived on the scene with Rex, a narcotics patrol dog. Buracker directed defendant and the other two men to sit on the curb while Warner and Rex investigated the car. When Warner stated that he "was getting a hit to the front" of defendant's car, Corporal Dodson suggested placing handcuffs on defendant, who then ran from the scene despite the officers' attempts to stop him.

Acting on the information provided by the dog's hit, the officers opened the hood of the car and found a shopping bag next to the battery. The bag contained a .38 caliber pistol and suspected illegal drugs in a baggie. In the car's interior, the officers found under the driver's seat an additional .22 caliber pistol and a baggie with several small aluminum foil packages containing PCP.

The trial court heard defendant's pretrial motion to suppress on June 26, 1996. Buracker testified that while he was writing the summons, defendant was "a little uneasy, pacing his feet . . . walking back and forth." Warner stated that when he arrived on the scene he observed that defendant "was excited" and that he "was pacing, throwing his hands in the air . . . . [H]e

3

was distraught that Officer Buracker had stopped him . . . . [H]e was combatted [sic] in reference to the stop."

Defendant testified that he did not see Buracker's vehicle, and that he stopped on the side of the road because of mechanical problems with the car. He claimed that Buracker told him that he was free to go, but as he began to walk away, he was pushed in the back by an "officer with black hair." He testified that he then ran from the scene "[f]or my own safety. I didn't want to get beat down for no reason just for altered suspension."

The Commonwealth contended that the officers possessed reasonable and articulable suspicion to stop and detain defendant based on the circumstances existing at the time, including the car's lowered suspension, defendant's demeanor and actions, the locked car doors, and the dog's "hit." The trial court granted the suppression motion in part and stated as follows:

> The Court would first see Officer Buracker's stop of this vehicle to have been entirely appropriate under the facts of this case in terms of his having stopped the vehicle or having approached the vehicle, because the evidence in this case is not that he actually stopped the vehicle. The vehicle was stopped by [defendant] in order that he might park the vehicle and lock it and go wherever else he was supposed to go. But Officer Buracker had a right to temporarily detain [defendant] in order that he could issue him a citation for this traffic infraction, which he did.
>
> The question is whether or not he could further detain [defendant] in order that this dog might make this inspection of the vehicle [defendant] had been in with the two other persons, and whether or not he had reasonable articulable suspicion to do so. . . . There

4

are no objective facts which would have permitted this officer to detain [defendant] further after he had issued him the citation.

Now, anything that would flow from that detention would be excluded pursuant to this motion to suppress and Wansung [sic] and its progeny in terms of fruit of the poisonous tree. However, there has to be some nexus between the continued detention of [defendant] and the illegal or purported illegal search and seizure of the vehicle. And in this case, there isn't, because [defendant], by his own testimony, had locked the vehicle. And the vehicle was inoperable at the time he locked the vehicle, according to his own testimony.

\* \* \* \* \* \* \*

So the question becomes then whether or not the officer who arrived with the dog was presented with reasonably articulable facts as a result of the sniff of the dog and to conduct a search of the vehicle. And the Court finds that he was.

The Court, in this case, therefore, will grant the motion to suppress insofar as any statements that may have been made or actions by [defendant] <u>subsequent to the issuance of the summons</u>, deny the motion with respect to <u>any items that may have been seized as a result of the search of the vehicle in this case.</u>

(Emphasis added). In effect, this ruling allowed in all the tangible evidence of guns and drugs and excluded only the evidence of defendant's flight.

## II.  PROSECUTOR'S CERTIFICATION

We first address the question whether we may review a prosecutor's certification made pursuant to Code § 19.2-398(2)

5

that the evidence excluded is essential to the prosecution.[2]

This issue is one of first impression.  Code § 19.2-398 provides

in pertinent part:

> A petition for appeal from a circuit court may be taken by the Commonwealth only in felony cases, before a jury is impaneled and sworn in a jury trial, or before the court begins to hear or receive evidence or the first witness is sworn, whichever occurs first, in a nonjury trial.  The appeal may be taken from:
>
>     *    *    *    *    *    *    *
>
> (2)  An order of a circuit court prohibiting the use of certain evidence at trial on the grounds such evidence was obtained in violation of the provisions of the Fourth, Fifth or Sixth Amendments to the Constitution of the United States or Article I, Sections 8, 10 or 11 of the Constitution of Virginia prohibiting illegal searches and seizures and protecting rights against self-incrimination, provided the Commonwealth certifies the evidence is essential to the prosecution.

(Emphasis added).  "'[T]he plain, obvious, and rational meaning

of a statute is always to be preferred to any curious, narrow, or

strained construction.'"  Bunn v. Commonwealth, 21 Va. App. 593,

598, 466 S.E.2d 744, 746 (1996) (quoting Turner v. Commonwealth,

226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)).  "Generally, the

words and phrases used in a statute should be given their

ordinary and usually accepted meaning . . . ."  Woolfolk v.

---

[2] Because we conclude that the Court of Appeals will not review a prosecutor's certification pursuant to Code § 19.2-398(2), we do not reach the merits of the "essential-to-the-prosecution" issue.

6

<u>Commonwealth</u>, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994).

> While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered <u>from the words used</u>, unless a literal construction would involve a manifest absurdity.  Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it actually expressed.

<u>Dominion Trust Co. v. Kenbridge Constr. Co.</u>, 248 Va. 393, 396, 448 S.E.2d 659, 660 (1994) (emphasis added) (quoting <u>Barr v. Town & Country Properties, Inc.</u>, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)).

> We must also assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words as we interpret the statute.  "Courts are not permitted to rewrite statutes.  This is a legislative function.  The manifest intention of the legislature, clearly disclosed by its language, must be applied.  There can be no departure from the words used where the intention is clear."

<u>Barr</u>, 240 Va. at 295, 396 S.E.2d at 674 (quoting <u>Anderson v. Commonwealth</u>, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944)).

Defendant contends that our power to review the prosecutor's certification arises as an "element of the Court's jurisdiction over criminal appeals as well as an exercise of the Court's inherent power over its operations and its officers."  However, he agrees that "there does not appear to be any authority expressly governing this issue."

7

We have discussed on numerous occasions the limited scope of the Commonwealth's right to appeal and the nature of the appeal authorized. "The statute must be read so as to give effect to the plain meaning of all of its terms. It is in derogation of the general constitutional prohibition against appeals by the Commonwealth. It 'must be strictly construed against the state and limited in application to cases falling clearly within the language of the statute.'" Commonwealth v. Hawkins, 10 Va. App. 41, 44, 390 S.E.2d 3, 5 (1990) (citations omitted). See also Commonwealth v. Brown, 8 Va. App. 41, 378 S.E.2d 623 (1989); Commonwealth v. Rodgers, 21 Va. App. 745, 467 S.E.2d 813 (1996). Accordingly, we decline to write additional language into Code § 19.2-398 to provide an avenue for this Court to review a prosecutor's certification when the General Assembly declined to do so.

Moreover, this statutorily circumscribed appeal is also controlled by expedited time limitations. "The Court of Appeals shall accelerate the appeal on its docket and render its decision not later than sixty days after the filing of the appellee's brief or after the time for filing such brief has expired." See Code § 19.2-404. There is no statutory scheme which would include an additional hearing within this appeal to determine a prosecutor's good faith or lack thereof.

The corresponding federal statute, 18 U.S.C. § 3731, contains language similar to that of Code § 19.2-398(2) and

8

provides in pertinent part as follows:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence . . . in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, <u>if the United States attorney certifies to the district court</u> that the appeal is not taken for purpose of delay and <u>that the evidence is a substantial proof of a fact material</u> in the proceeding.

(Emphasis added). We find federal case law interpreting this statute instructive in our analysis in the instant case. The certification by a federal prosecutor under 18 U.S.C. § 3731 that a pretrial appeal from an adverse suppression ruling is not being taken for purposes of delay and that the appeal involves "evidence . . . material in the proceeding" is not judicially reviewable. See <u>United States v. Kepner</u>, 843 F.2d 755, 761 (3d Cir. 1988) (the court declined to analyze the United States attorney's required certification to the district court); <u>In re Grand Jury Investigation</u>, 599 F.2d 1224, 1226 (3d Cir. 1979) ("The district court having received this certification, we are not required by section 3731 to evaluate independently the substantiality or the materiality of the contested material."); <u>United States v. Comiskey</u>, 460 F.2d 1293, 1297-98 (7th Cir. 1972) (holding that "[t]he form of the certification is not prescribed in the statute[,]" and that under 18 U.S.C. § 3731, a United States attorney need not allege any facts in support of the certification that his appeal is not meant for delay or that the

9

suppressed evidence is substantial proof of the charge).  The

Kepner Court explained its reasoning with respect to 18 U.S.C.

§ 3731 as follows:
> Each of the jurisdictional prerequisites has
> been met.  The two orders from which the
> Government appeals both suppress evidence,
> and both were made before the defendants were
> put in jeopardy and before a verdict was
> rendered on the indictment.  The United
> States Attorney has made the required
> certification to the district court.  <u>This
> court need look no further in order to
> determine the existence of jurisdiction.</u>

Kepner, 843 F.2d at 761 (emphasis added).  We adopt this

reasoning and hold that the prosecutor's certification that "the

evidence is essential to the prosecution" is not reviewable on

appeal.

### III.  DETENTION BEYOND INITIAL STOP

In reviewing a trial court's ruling on a suppression motion,

we consider the evidence in the light most favorable to the

prevailing party below, and the decision will not be disturbed

unless it is plainly wrong or without evidence to support it.

Lee v. Commonwealth, 18 Va. App. 235, 238, 443 S.E.2d 180, 181

(1994); Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407

S.E.2d 47, 48 (1991).

It is undisputed that the police had the right to stop and

temporarily detain defendant to issue him a traffic citation for

a violation of Code § 46.2-1063.  Defendant argues that no

objective facts warranted his further detention after the

10

issuance of the citation, because the police had no reasonable articulable suspicion that he was engaged in criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). The Commonwealth contends that a "combination of articulable facts gave the officers reasonable suspicion to justify the detention after the . . . [initial] stop ended," beyond the time necessary to issue the traffic summons.

It is well-settled in Virginia that "'[w]hen the police stop a motor vehicle and detain an occupant, this constitutes a seizure of the person for Fourth Amendment purposes, even though the function of the stop is limited and the detention brief.'" Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (en banc) (quoting Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988)). A police officer may conduct an investigatory stop of a vehicle when he or she has an "articulable and reasonable suspicion that . . . either the vehicle or an occupant is otherwise subject to seizure for violation of law." Delaware v. Prouse, 440 U.S. 648, 663 (1979).

"When determining if reasonable suspicion exists, courts must consider that '[t]rained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" Buck v. Commonwealth, 20 Va. App. 298, 302, 456 S.E.2d 534, 536 (1995) (citing Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989)). The court "must view the totality of the circumstances and view those facts

11

objectively <u>through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer.</u>"  <u>Logan</u>, 19 Va. App. at 441-42, 452 S.E.2d 364 at 367 (quoting <u>Murphy v. Commonwealth</u>, 9 Va. App. 139, 143-44, 384 S.E.2d 125, 128 (1989)).

In order to make a valid investigatory stop, a police officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'"  <u>Baldwin v. Commonwealth</u>, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992) (citing <u>Terry</u>, 392 U.S. at 21).  "Reasonable suspicion" is more than a "mere hunch" but less than "proof of wrongdoing by a preponderance of the evidence."  <u>See</u> <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1988).

"There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop.  Instead, the courts must consider 'the totality of the circumstances--the whole picture.'"  <u>Hoye v. Commonwealth</u>, 18 Va. App. 132, 134-35, 442 S.E.2d 404, 406 (1994) (quoting <u>Sokolow</u>, 490 U.S. at 8).  The circumstances to consider in making the determination include "the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."  <u>Smith v. Commonwealth</u>, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51-52 (1991)

12

(citations omitted).

The Commonwealth contends that Limonja v. Commonwealth, 8 Va. App. 532, 383 S.E.2d 476 (1989), governs the instant case. We agree. In Limonja, as here, the issue was whether the "combination of articulable facts gave the officers reasonable suspicion to justify the detention after the consensual stop ended." Id. at 542, 383 S.E.2d at 482. In Limonja, after observing a rental car with a Florida license plate, the police officer "radioed for a narcotics dog and a backup." Soon thereafter, at 12:20 p.m., he stopped the defendants after they drove through a stop sign at an automatic toll booth without paying the toll. Initially, the defendants consented to the search of their vehicle and a package contained in the vehicle. However, at 12:48 p.m., while waiting for the narcotics dog to arrive, the defendants withdrew their consent for the officers to search the package. The dog arrived on the scene at 1:10 p.m. and "alerted on the package." The defendants again consented to a search of the package, which contained a white powder substance, and were arrested at 1:20 p.m.

In analyzing the issue whether the time lapse between the defendant's withdrawal of consent and the dog's alerting on the package removed this stop from the parameters of an "investigative stop," we determined that:

> In assessing whether a detention is too long in duration to be considered an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation

13

> that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.
>
> Using the foregoing tests, courts have upheld detentions of forty-five minutes; fifty minutes; sixty minutes; and seventy-five minutes, [including] cases involv[ing] delays necessitated by efforts to obtain a narcotics dog for sniffing luggage or packages . . . .

Id. at 542-43, 383 S.E.2d at 482 (citations omitted). Thus, we held that "[i]t is just as clear that there will be inevitable delay in obtaining a dog to sniff luggage or packages transported on interstate highways. If, as in this case, the officers make a diligent effort to obtain a dog, continued detention during the delay does not violate the constitution. Therefore, . . . we find that the detention did not exceed the permissible bounds of an investigatory stop." Id.[3]

The evidence in the instant case established objective facts comparable to those of Limonja and, when considered in the aggregate, gave the officers reasonable suspicion of the defendant's involvement in criminal activity. In Limonja, as in the instant case, the police had lawful authority to stop the vehicle for a traffic violation. However, in Limonja, twenty-two

_____

[3]We also analyzed whether there was any "'way that the agents could have greatly shortened their inquiry if they were to "confirm or dispel their suspicions" meaningfully.'" Limonja, 8 Va. App. at 543, 383 S.E.2d at 483 (quoting United States v. Quinn, 815 F.2d 153, 158 (1st Cir. 1987)). We held that the police "had not been investigating the defendants, had not anticipated the encounter, and could not have dispelled their suspicions more quickly." Id. We reach the same conclusion in the instant case.

14

minutes elapsed between the defendant's withdrawal of consent and the alerting by the narcotics dog. Here, a scant one to one and a half minutes passed between the writing of the citation and the dog's alerting on the hood of defendant's car. The officers in Limonja observed that the defendants possessed a radar detector, behaved in a nervous fashion, and offered confused and inconsistent explanations for the package. In the case at bar, Buracker detected an odor of alcohol on defendant and observed defendant's nervous behavior, including locking the car door, pacing, and becoming excited and agitated. This scenario, coupled with the fact that the stop occurred at approximately 11:00 p.m. at night in an isolated area, gave the police a reasonable suspicion to detain the defendant for the one and a half minutes prior to the dog's hit. See Smith, 12 Va. App. at 1103, 407 S.E.2d at 51-52.

Defendant's reliance on Deer v. Commonwealth, 17 Va. App. 730, 441 S.E.2d 33 (1994), is misplaced. In that case, the officer stopped Deer for speeding. Following the issuance of a speeding citation, the officer requested permission to search Deer's vehicle. Deer refused, but later agreed to the search when the officer told him that he would be detained until a K-9 drug unit arrived. When the officer found a bag in the car containing a white substance, Deer fled the scene. The trial court denied his motion to suppress, even though the Commonwealth admitted that, at the time of the search, the officer "lacked

15

probable cause to suspect that Deer had committed a crime."  Id. at 733, 441 S.E.2d at 35.  Because the facts that the officer relied upon amounted to "no more than an 'inchoate and unparticularized suspicion or "hunch,"'" we held that "the detention of [defendant] and his vehicle beyond the time necessary to issue the traffic citation was not permitted under the Fourth Amendment."  Id. at 736, 441 S.E.2d at 37 (citation omitted).  Here, there was no time delay for the arrival of the K-9 unit.  They were already present before the completion of the traffic stop.  The police had a reasonable basis to suspect criminal activity and to detain the defendant for a brief period after the issuance of the traffic citation and prior to the police dog indicating the presence of drugs.

For the foregoing reasons, the ruling of the trial court is reversed and the case remanded for trial.

Reversed.