COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Willis
Argued by Teleconference


COMMONWEALTH OF VIRGINIA
                                        MEMORANDUM OPINION[*] BY
v.          Record No. 2929-96-3        JUDGE SAM W. COLEMAN III
                                             APRIL 1, 1997
CHARLIE M. ALLEN


              FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                     George E. Honts, III, Judge

              Marla Graff Decker, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on briefs), for appellant.

              Thomas W. Roe, Jr. (Spigle & Roe, P.C., on
              brief), for appellee.


        The defendant was indicted for possession of a firearm while

in possession of a controlled substance, possession of marijuana

with intent to distribute, and possession of cocaine.  Defendant

filed a motion to suppress the evidence which had been recovered

in the traffic stop on the ground that the stop was merely a

pretext to enable the law enforcement officers to search the

defendant's vehicle for contraband.  The trial court granted the

suppression motion, ruling that the stop became an illegal

seizure when the deputy asked for permission to search the

vehicle after having told the defendant he was free to leave and

when he had no reason to suspect that the vehicle contained

contraband.  Thus, the trial court ruled that the consent to

---

        [*] Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

search was not voluntary and that the drugs were seized as the result of an illegal search.

The Commonwealth appeals that ruling pursuant to Code § 19.2-398(2). The dispositive issue on appeal is whether, after legally stopping the defendant for a traffic infraction, the deputy illegally detained the defendant when he asked for consent to search the vehicle after telling the defendant he was free to leave. We hold that the deputy's request for consent to search the vehicle did not constitute an illegal detention of the defendant. Accordingly, we reverse the trial court's ruling.

On July 3, 1996, Botetourt County Deputy Sheriff B. J. Ulrich was parked in the median strip on Interstate 81 observing northbound traffic "looking for traffic violations." K. K. Parker, an undercover narcotics deputy, was riding with Ulrich at the time. The deputy observed a white van with large objects, later determined to be a fan and an air freshener, hanging from the rearview mirror. The deputy followed the van and at one point observed it weave within its lane and run off the left shoulder of the road. Based upon the operation of the vehicle and the objects hanging from the mirror, the deputy activated his lights and siren and stopped the van. The deputy noted that the van bore Louisiana license plates.

The defendant, who was operating the van, exited it and identified himself at the deputy's request. He told the deputy he was traveling from Louisiana to Washington, D.C. The deputy

asked the defendant to remove the objects hanging from the rearview mirror and ran a license check on the defendant's license. After completing the license check without issuing a ticket, the deputy told the defendant he was free to leave.

Before the defendant returned to his vehicle, the deputy "asked him if he was hauling any illegal narcotics, or weapons, or large amounts of U.S. currency. He stated no." The deputy then asked the defendant for permission to search the vehicle, to which request the defendant consented. The defendant unlocked the passenger door of the van, and the deputy searched the van's interior. As a result of the search, the deputy recovered a handgun, a small plastic "baggie" containing cocaine, a set of hand scales, and a cooler containing three bags of marijuana intermingled with "dryer sheets." During the entire encounter, the undercover detective was standing outside the police vehicle, but he did not approach the defendant. Neither officer had a weapon drawn or used raised voices.

At the hearing on the defendant's motion to suppress, the circuit court judge indicated that "the [initial] stop was good," but took the case under advisement to consider the effect of the deputy having told the defendant he was free to leave and then asking for consent to search his vehicle. In a letter opinion, the judge granted the motion to suppress, holding that:

> When the deputy requested permission to search the vehicle [after telling the defendant he was free to leave], he did so with no expressed or implied probable cause or articulable suspicion. His request,

> coupled with the fact the defendant was
> outside the vehicle, constitutes a new and
> definable detention of the defendant. No
> reasonable person would then assume he or she
> was free to leave. . . . There being no
> articulable suspicion, the detention was
> unlawful and the subsequent search was
> unlawful.

Because the deputy observed erratic driving and objects hanging from the rearview mirror in violation of Code § 46.2-1054, the initial stop was valid. See Whren v. United States, 116 S. Ct. 1769, 1774 (1996) (holding that a pretextual stop is not invalid as long as it is justifiable on the basis of probable cause to believe a traffic violation has occurred); Delaware v. Prouse, 440 U.S. 648, 663 (1979) (holding that an officer may stop a vehicle if the vehicle or occupant is subject to seizure for violation of the law); Commonwealth v. Thomas, 23 Va. App. 598, 610-11, 478 S.E.2d 715, 721 (1996) (same); Hoye v. Commonwealth, 18 Va. App. 132, 134, 442 S.E.2d 404, 406 (1994) (same). Thus, the initial stop of the defendant did not violate the Fourth Amendment.

The trial judge held that the initial legal detention ended when the officer told the defendant he was free to leave, but a second seizure, which was unsupported by articulable suspicion, began when the officer asked the defendant if he was transporting contraband. After the defendant was told he was free to leave, the officer did not restrain the defendant by physical force or show of authority. No evidence supports the trial court's ruling that the defendant was seized or detained after being told he was

free to leave.  Accordingly, we hold that the evidence was seized as the result of a voluntary consent by the defendant to search his vehicle and not as the result of an illegal detention.  The trial court erred by suppressing the evidence.

An accused is seized when the police restrain his movement "by the use of physical force or show of authority."  Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996) (citing California v. Hodari D., 499 U.S. 621 (1991)). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification."  United States v. Mendenhall, 446 U.S. 544, 553-54 (1980); see also Greene v. Commonwealth, 17 Va. App. 606, 610-11, 440 S.E.2d 138, 140-41 (1994); Payne v. Commonwealth, 14 Va. App. 86, 89, 414 S.E.2d 869, 869-70 (1994); Bosworth v. Commonwealth, 7 Va. App. 567, 570, 375 S.E.2d 756, 758 (1989). Circumstances to be considered when determining whether a reasonable person would have felt free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language, or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554.

Here, the initial stop of the van was a detention of the

defendant. However, once the deputy told the defendant he was free to leave, the detention ended. Thereafter, the deputy made no show of authority or force and used no coercion that would lead a reasonable person to believe that he was not free to leave. Instead, the deputy asked the defendant whether he was transporting contraband. After being told no, the deputy then asked the defendant for permission to search the van. The fact that the defendant was still outside the van at the time the deputy asked the questions does not make the encounter a detention; neither does the fact that another officer was on the scene. The officer was not physically restraining or exercising any control over the defendant and had not by his words, actions, or by other show of authority indicated that the defendant was not free to leave. The defendant was not seized for a second time until he was arrested for the possession of a firearm offense.

Accordingly, we reverse the decision of the trial court and remand the case for further proceedings.

<u>Reversed and remanded</u>.