# CIRCUIT COURT OF THE CITY OF WINCHESTER

Commonwealth of Virginia

v.

Terrence Penn

January 13, 2003

Case No. (Criminal) 02-538

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the evidence earlier presented and the parties' memoranda of authorities on the Defendant's motion to suppress evidence which was obtained by a consent search after a car in which the Defendant was a passenger was stopped because an air freshener was dangling from the car's rear view mirror.

## I. *Findings of Fact*

The following facts are found by the greater weight of the evidence.

The Defendant was a passenger in a car which was stopped by a Winchester police officer because a four by six inch, blue tree air freshener was dangling from the vehicle's rear view mirror.

For some unexplained reason, after the vehicle was stopped, the officer asked the occupants to exit the vehicle, and the officer said that the Defendant "exited slowly and methodically" from the vehicle, that the Defendant appeared to be nervous, and that this behavior made the officer suspicious, so he asked the Defendant if he could search him, and the Defendant consented. During the search, the officer discovered $1,070.00 in cash and felt a bulge in the Defendant's crouch which turned out to be about seven grams of cocaine, whose discovery is the subject of this motion to suppress. The Court has already ruled that the consent search was valid, and the only issue remaining to be decided is the lawfulness of the stop.

While the Court may have many foibles, dangling objects from the rear view mirror is not among them. The Court's only prior actual experience with objects dangling from a rear view mirror was in a similar case about a month ago incident to a motion for a view, when the Court sat in the driver's seat of a parked car which had an air freshener suspended from the rear view mirror, and the Court found that, sitting in the driver's seat looking ahead, that object did not obstruct the driver's view of the highway. However, this case's following so closely on the heels of the former case piqued the Court's curiosity, so it draped a rope over its rear view mirror and discretely drove around town. At every intersection and every time a right turn is made, the driver must look to his right, and an object suspended from the rear view mirror is squarely within the driver's field of vision through the windshield with respect to the highway.

## II. *Conclusions of Law*

A passenger in a motor vehicle which is stopped by the police has standing to challenge the legality of the stop. *Josephs v. Commonwealth*, 10 Va. App. 87, 390 S.E.2d 491 (1990) (reasonable expectation of privacy extends to passengers lawfully in a motor vehicle); *see generally Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576 (general discussion of reasonable expectation of privacy).

A police officer may stop a motor vehicle "for investigatory purposes if [the officer] possesses a reasonable and articulable suspicion" that the law has been violated. *Hoye v. Commonwealth*, 18 Va. App. 132, 134, 442 S.E.2d 404 (1994). The officer said that he stopped the car to investigate a potential violation of Virginia Code § 46.2-1054, which provides in pertinent part that:

It shall be unlawful for any person to drive a motor vehicle on a highway in the Commonwealth with any object or objects . . .

suspended from any part of the motor vehicle *in such a manner as to obstruct the driver's clear view of the highway through the windshield, the front side windows, or the rear view window. . . .*

(Emphasis added.)

Legal interpretation of criminal statutes is a perilous undertaking, because someone's liberty is at stake and the determination of a person's potential guilt should not depend upon the perspective of the judge interpreting a statute. "Every man should be able to know with certainty when he is committing a crime. . . . It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who should be rightfully detained and who should be set at large." *United States v. Reese*, 92 U.S. 214, 221, 23 L. Ed. 563, 566 (1876). For that reason, the General Assembly strives to make its statutes patently clear, and, given legislative clarity, the Supreme Court has been very restrained in its interpretation of criminal statutes. The Supreme Court recently stated in *Armstrong v. Commonwealth*, 263 Va. 573, 581, 562 S.E.2d 139 (2002), in determining what was meant by the word "firearm" in the statute making it a crime for a convicted felon to possess a firearm:

> "Penal statutes must be 'strictly construed against the State' and . . . 'cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit'." *Commonwealth, Dep't of Motor Vehicles v. Athey*, 261 Va. 385, 388, 542 S.E.2d 764, 766 (2001) (quoting *Berry v. City of Chesapeake*, 209 Va. 525, 526, 165 S.E.2d 291, 292 (1969)). However, although we construe statutes strictly in criminal cases, we will not apply "an unreasonably restrictive interpretation of the statute" that would subvert the legislative intent expressed therein. *Ansell v. Commonwealth*, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979).

There is some human conduct so antithetic to human society that it has been proscribed by every organized state since recorded history. Legal scholars call these acts *malum in se*, and murder, robbery, and rape are obvious examples. On the other hand, there are those acts, which though morally neutral in themselves may pose a risk to others if given unbridled license in a modern state, and these are the acts classed as *malum prohibitum*.

Dangling of objects from a rear view mirror falls within this latter class of criminal conduct.

In the hierarchy of criminal conduct, dangling an object from the rear view mirror may be near the bottom of the list, nonetheless it is proscribed under certain circumstances. Relying on the unreported cases of *Pegram and Lynch v. Commonwealth*, Va. Court of Appeals 1041 (and 1042)-95-2 (2001) (objects hanging from rear view mirror), and *McNair v. Commonwealth*, Va. Court of Appeals 1238-00-2 (2001) (large cloth object hanging from rear view mirror), this Court earlier held that any object which dangled from the mirror could potentially violate the statute, therefore it was a valid reason to justify a stop. The Court likened the dangling object to a "Stop me if you want to" sign for the police. More recently, the Court had another dangling case in which an engineer testified and which testimony emphasized the fact that an air freshener hanging from a rear view mirror is not in the driver's direct view when he is looking directly ahead driving down the highway and does not materially obstruct the driver's view through the windshield. The Court took a view and, as stated above, sat in the driver's seat but did not drive the vehicle. The Court was presented with a very technical, scientific argument, which frankly bedazzled the Court given its lack of any actual dangling experience while driving, and the Court reversed its position earlier stated and granted the motion to suppress, because the air freshener did not obstruct the driver's clear view of the highway as he looked directly ahead through the windshield. The Court has now been asked to revisit this issue.

The statute prohibits those objects which are suspended from the rear view mirror "in such a manner as to obstruct the driver's clear view of the highway through the windshield." The statute is clear and unambiguous. If a statute is clear and unambiguous, a court will give the statute its plain meaning. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Where the statute is clear, the court may not "resort to legislative history and extrinsic facts" to interpret words whose meaning is clear; it must "take the words as written" and give them their plain meaning. *Id.* at 321. "Obstruct" means "to block" or "to cut off from sight"; "clear" means "unhampered by restriction or limitation." *Merriam Webster's Collegiate Dictionary* (tenth ed. 1993). "For this Court to place any limitation on the clear and comprehensive language of the statute, or to create an exception where none exists under the guise of statutory construction, would be to defeat the purpose of the enactment and to engage in judicial legislation." *Town of Crewe v. Marler*, 228 Va. 109, 114, 319 S.E.2d 748 (1984). The statute does not say materially obstruct the driver's view, it says "obstruct." The size of the object dangled makes no difference, because any object suspended from the rear view mirror

below the level of the mirror is in the driver's field of vision as he drives and "obstructs the driver's clear view of the highway through the windshield."

Contemporary relativism has little place in the law, and no place in the universe of criminal law. The variety and the frequency with which objects are suspended from rear view mirrors may be a reflection of the egocentricity of the driver and of the public's general ignorance of the statutory prohibition, but that does not excuse the conduct. Criminal laws must precisely describe the elements of the crime, so that every defendant's conduct is assessed by an objective standard. The threshold question in every criminal case is whether the conduct alleged if proven would violate the law. Any object hanging from the rear mirror which is between the driver's eyes and the object viewed obstructs the viewer's sight in both the literal and physical sense, and the statute is obviously premised on this fact. Implicit in the statute is the fact that the "clear view of the highway" contemplated is the driver's view as he is operating his motor vehicle, whose safe operation requires him to look in directions other than simply straight ahead, for that reason the statute prohibits suspending objects "in such a manner as to obstruct the driver's clear view of the highway through the *windshield, the front side windows, or the rear view window.*"

As the Court of Appeals noted in *Limonja v. Commonwealth*, 8 Va. App. 532, 537-38, 375 S.E.2d 756 (1989):

> The objective sufficiency of the reasons for the stop is the test for determining whether the stop is pretextual. Police actions are to be tested "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." *Scott v. United States*, 436 U.S. 128, 138 (1978) (footnote omitted). "[T]he validity of an arrest is normally gauged by an objective standard rather than by inquiry into the officer's presumed motives. If this were not so, an arrest's validity could not be settled until long after the event; it would depend not only on the psychology of the arresting officer but the psychology of the judge." *United States v. McCambridge*, 551 F.2d 865, 870 (1st Cir. 1977). "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon*, 472 U.S. 463, 470-71 (1985) (quoting *Scott*, 436 U.S. at 136, 138-39, n. 13). "[I]n

determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation." *United States v. Smith*, 799 F.2d 704, 708 (11th Cir. 1986) (emphasis in original).

A police officer may stop a motorist whenever he has an objective, articulable suspicion that the law has been violated. In this case the officer saw the air freshener hanging from the rear view mirror so he stopped the car to investigate the potential violation of the statutory prohibition against suspending objects from the rear view mirror; therefore, the initial traffic stop was valid. *See Whren v. United States*, 135 L. Ed. 2d 89, 116 S. Ct. 1769, 1774 (1996) (holding that a pretextual stop is not invalid as long as it is justifiable on the basis of probable cause to believe a traffic violation has occurred); *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979) (holding that an officer may stop a vehicle if the vehicle or occupant is subject to seizure for violation of the law); *Commonwealth v. Thomas*, 23 Va. App. 598, 610-11, 478 S.E.2d 715, 721 (1996) (same).

The greatest prerogative of a Court is to correct its own error, and this case permits the Court to correct an error which it previously made. The law is premised on the proposition that truth may advance only if error is freely exposed.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Defendant's motion to suppress is denied.