COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Millette
Argued at Chesapeake, Virginia


JUSTIN JESSE MIDDLEBROOKS
                                                        OPINION BY
v.        Record No. 1484-07-1             JUDGE LeROY F. MILLETTE, JR.
                                                       AUGUST 5, 2008
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          A. Joseph Canada, Jr., Judge

            Steven C. Frucci (Christie, Kantor, Griffin & Smith, P.C., on brief),
            for appellant.

            Richard B. Smith, Special Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Justin Jesse Middlebrooks (Middlebrooks) was convicted, pursuant to a conditional guilty

plea in accordance with Code § 19.2-254, of possession of marijuana with intent to distribute in

violation of Code § 18.2-248.1 and urinating in public.[1]  Middlebrooks appeals the trial court's

denial of his pretrial motion to suppress marijuana found in his vehicle, arguing his Fourth

Amendment right against unreasonable searches and seizures was violated.  Middlebrooks claims

his encounter with police was not consensual and the police had no reasonable, articulable

suspicion to justify his seizure and subsequent search.  For the following reasons, we reverse and

remand Middlebrooks' conviction.

---

        [1] Middlebrooks did not challenge the urinating in public charge.  Additionally, police
found a firearm in the trunk of Middlebrooks' vehicle and he was charged with possession of a
concealed firearm.  However, on March 13, 2007, on the Commonwealth's motion, the trial
court *nolle prosequied* this charge.

I. BACKGROUND

At approximately 1:10 a.m. on July 2, 2006, plain-clothed Virginia Beach police officers, from the Special Investigations Unit on vice and narcotics, were conducting a bike patrol of the oceanfront between 19th and 21st Streets. Police refer to this area as "a fishing hole for criminal behavior," where they make "a lot of arrests . . . drug arrests, gun arrests . . . ." Officers observed a man, later identified as Middlebrooks, in the McDonald's restaurant parking lot urinating next to a parked vehicle.

Officer D'Orio, from the Special Investigations Unit, approached Middlebrooks and identified himself as a police officer. Middlebrooks was cooperative and admitted his violation. Middlebrooks consented to a search of his person, and the search yielded nothing. Officer D'Orio asked Middlebrooks if the car he was standing next to was his. Middlebrooks responded, "It's my people's car." Officer D'Orio wrote Middlebrooks a citation for urinating in public and then left the McDonald's parking lot to continue his oceanfront patrol.

Officer D'Orio rejoined his fellow Special Investigations Unit officers in a parking lot close to McDonald's. From their new vantage point, the officers observed Middlebrooks in the McDonald's parking lot "milling around" his "people's car," and about five to ten minutes later, sitting in the driver's seat of the vehicle. Detective Brandt, another member of the Special Investigations Unit, called dispatch to find out who owned the vehicle that Middlebrooks was now sitting in. A search of the tag revealed the vehicle belonged to Middlebrooks.

Officer D'Orio testified that at this point, he suspected Middlebrooks was involved with illegal narcotics because he had lied about ownership of his vehicle, he was located in a high crime area, and the specific McDonald's parking lot where he was "milling around" had been the scene of prior drug-related arrests. While Middlebrooks was still seated in the vehicle, Officer D'Orio approached and asked Middlebrooks to exit the vehicle so they could speak. After

Middlebrooks denied Officer D'Orio's request to search the vehicle, Sergeant Dimitry told Middlebrooks, "I just want to let you know I'm going to call the drug dog out. I'm going to have him run your car." Sergeant Dimitry then asked if there was any "weed" in the vehicle. Middlebrooks responded that there was "weed" in the center console of the vehicle. The officers' search of the vehicle uncovered approximately one ounce of marijuana and a digital scale. After conducting a search of Middlebrooks incident to arrest, officers found $453 in small bills in his pockets.

Middlebrooks made a pretrial motion to suppress his incriminating statements and the evidence recovered from the search of his person and his vehicle. Middlebrooks claimed the search and seizure were conducted in violation of the Fourth Amendment. Officer D'Orio and Sergeant Dimitry were the sole witnesses who testified at the pretrial hearing. The trial court denied Middlebrooks' motion to suppress,[2] finding:

> The evidence shows, that [the officers] noticed the defendant acting in a strange fashion after the [first] encounter in that he had told them that [a] particular vehicle was not his car. It was his people's car; and then when they see him still in the parking lot, *it raised their suspicion* because . . . [t]he drive-through was open, but the restaurant is closed, and he continues [to stay] in the parking lot. And so they run the license plate, and it turns out that the vehicle is registered to the defendant . . . . [After Middlebrooks denies consent to search his car] *[t]he court at this point finds that this is totally a consensual encounter* because the conversation is taking place outside the vehicle in which the police have asked the defendant to step out . . . they [then] had this discussion about the drug dog. . . . And they told him, well, basically, we're going to have a drug dog come . . . and then the defendant doesn't give permission as such to search; but what he says is . . . I've got weed in the car . . . . *The court finds that the encounter to begin with was consensual and that the fact that the defendant told them that the drugs were in the vehicle . . . was not based on coercion. . . . [T]he court finds that the totality of the evidence is that the Fourth Amendment was not violated.*

---

[2] The Honorable H. Thomas Padrick, Jr., presided over the hearing on Middlebrooks' motion to suppress.

> [Defense Counsel]  *Are you finding that once the drug dog comment was made, it was no longer consensual or was it still consensual at that point?*
>
> [Court]  *It was still consensual.*

(Emphasis added).  This appeal followed.

## II.  ANALYSIS

On appeal, "[t]he defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error."  McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 515 (2008) (citing Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).  A claim under the Fourth Amendment "presents a mixed question of fact and law that an appellate court reviews de novo."  Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003) (citing Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)).  However, "'[w]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them.'"  Blevins v. Commonwealth, 40 Va. App. 412, 420, 579 S.E.2d 658, 662 (2003) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)).

## A.  CONSENSUAL ENCOUNTER

Middlebrooks asserts on appeal that he was illegally seized either when Officer D'Orio asked him to step out of his vehicle or when Sergeant Dimitry told him that a drug dog was coming to run his vehicle because he did not feel free to leave and the officers lacked reasonable suspicion.  The Commonwealth contends that the encounter was either consensual or supported by a reasonable and articulable suspicion.  We agree with Middlebrooks that the encounter

became non-consensual when Sergeant Dimitry told Middlebrooks that a drug dog was coming to run his vehicle.

"'Fourth Amendment jurisprudence recognizes three categories of police-citizen [contacts]: (1) consensual encounters, (2) brief, minimally intrusive investigatory detentions based upon specific, articulable facts, commonly referred to as <u>Terry</u> stops, and (3) highly intrusive arrests and searches founded on probable cause.'" <u>Blevins</u>, 40 Va. App. at 420-21, 579 S.E.2d at 662 (quoting <u>Wechsler v. Commonwealth</u>, 20 Va. App. 162, 169, 455 S.E.2d 744, 747 (1995)).

The trial court found the entire interaction, even following Sergeant Dimitry's drug dog comment and Middlebrooks' incriminating statements, was consensual. A police officer may stop and question a person if the encounter is consensual. <u>Harris v. Commonwealth</u>, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003) (citing <u>Florida v. Bostick</u>, 501 U.S. 429, 437 (1991); <u>Florida v. Royer</u>, 460 U.S. 491, 501 (1983)). An encounter is consensual unless, "a reasonable person would not feel free to decline an officer's requests or would not feel free to leave . . . ." <u>Id.</u> (citing <u>United States v. Mendenhall</u>, 446 U.S. 544, 558-59 (1980)). There is no bright-line test to determine whether an encounter is consensual, rather a consensual encounter inquiry is based on the totality of the circumstances. <u>Id.</u>

> Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.

<u>Id.</u> (citing <u>Ohio v. Robinette</u>, 519 U.S. 33, 36 (1996); <u>Royer</u>, 460 U.S. at 504; <u>Mendenhall</u>, 446 U.S. at 554).

We need not resolve whether Officer D'Orio seized Middlebrooks when he asked Middlebrooks to step out of his vehicle because no evidence was obtained from Middlebrooks at that time. However, it is clear that once Sergeant Dimitry told Middlebrooks, "I just want to let you know I'm going to call the drug dog out. I'm going to have him run your car," no reasonable person would have felt free to leave.

The facts of this case are similar to Deer v. Commonwealth, 17 Va. App. 730, 441 S.E.2d 33 (1994). [3] In Deer, appellant was pulled over by a police officer and given a citation for speeding. Id. at 732, 441 S.E.2d at 34-35. Appellant's nervous behavior made the officer suspicious, and he asked permission to search appellant's vehicle. Id. After appellant declined consent to search, "[the officer] said he would detain the vehicle and call for a K-9 drug unit . . . [and] that [appellant] might have to wait for up to an hour for the unit to arrive." Id. Once the officer stated his intention to call in a drug dog, appellant consented to the search. Id.

We held that although the initial seizure was properly based on probable cause that appellant had committed a traffic offense, "the continued detention of [appellant] and the vehicle [after the officer issued the citation for speeding] required additional justification to satisfy the requirements of the Fourth Amendment." Id. at 736, 441 S.E.2d at 37. "*[The officer] effected a seizure by stating that he would detain the vehicle for up to an hour to await the arrival of a K-9 unit*. If that seizure was not based upon an articulable suspicion that [appellant] was involved in criminal activity, [appellant]'s further detention was illegal." Id. (emphasis added). We

---

[3] During oral argument, the attorney general argued that Deer, 17 Va. App. 730, 441 S.E.2d 33, did not apply to the facts of this case, but rather our decision in Bosworth v. Commonwealth, 7 Va. App. 567, 375 S.E.2d 756 (1989), controlled. It is clear that Bosworth is not applicable here because in Bosworth, the issue was whether consent to search was procured through coercion, not whether an illegal search and seizure occurred due to police officers' lack of reasonable suspicion. Id. at 569-72, 375 S.E.2d at 757-59; Deer, 17 Va. App. at 736-37 n.3, 441 S.E.2d at 37 n.3 ("[w]e distinguish this case from Bosworth . . . on the ground that . . . [i]n Bosworth, there was no contention that the stop of the defendant's vehicle was an illegal seizure or that the officers lacked reasonable suspicion").

concluded the officer failed to have a reasonable, articulable suspicion that appellant was engaged in criminal activity and, therefore, the seizure violated the Fourth Amendment. Id.

Like the officer in Deer, Sergeant Dimitry's drug dog comment "implicitly commanded [Middlebrooks] to stay." Piggott v. Commonwealth, 34 Va. App. 45, 49, 537 S.E.2d 618, 619 (2000) (citing Hodnett v. Commonwealth, 32 Va. App. 684, 691-92, 530 S.E.2d 433, 436 (2000)). Thus, pursuant to the totality of the circumstances, including Sergeant Dimitry's use of compelling language, the presence of four officers at the scene, and the officers' failure to tell Middlebrooks he was free to leave, Middlebrooks was seized.

### B. REASONABLE SUSPICION

Middlebrooks contends the officers did not have a reasonable, articulable suspicion that he was engaged in criminal activity and, therefore, his seizure was not permitted under the Fourth Amendment. We agree.

To justify a Terry stop, "a police officer . . . must have 'a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity.'" Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722 (1997) (quoting Brown v. Texas, 443 U.S. 47, 51 (1979)). "[T]here are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop." Hoye v. Commonwealth, 18 Va. App. 132, 134-35, 422 S.E.2d 404, 406 (1994). "'Reasonable suspicion' is more than a 'mere hunch' but less than 'proof of wrongdoing by a preponderance of the evidence.'" Commonwealth v. Thomas, 23 Va. App. 598, 610-11, 478 S.E.2d 715, 721 (1996) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1988)). "To determine whether a police officer had a particularized and objective basis for suspecting that the person stopped may be involved in criminal activity, a court must consider the totality of the circumstances." Whitfield, 265 Va. at 361, 576 S.E.2d at 465 (citing Ewell, 254 Va. at 217, 491 S.E.2d at 722-23).

> The circumstances to consider in making the [reasonable suspicion] determination include "the 'characteristics of the area' where the stop occurs, the time of the stop, whether late at night or not, as well as any suspicious conduct of the person accosted such as an obvious attempt to avoid officers or any nervous conduct on the discovery of their presence."

Thomas, 23 Va. App. at 611, 478 S.E.2d at 721 (quoting Smith v. Commonwealth, 12 Va. App. 1100, 1103, 407 S.E.2d 49, 51-52 (1991)). "The character of the location and the time at which a person is observed are relevant factors, but they do not supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped." McCain, 275 Va. at 552, 659 S.E.2d at 516 (citing Brown, 443 U.S. at 51-52; Illinois v. Wardlow, 528 U.S. 119, 124 (2000)).

In this case, the police did not see Middlebrooks holding any drugs and they had not received any information suggesting that he possessed drugs. Smith, 12 Va. App. at 1104, 407 S.E.2d at 52 (ruling no reasonable suspicion existed where the officer did not see appellant in possession of any drugs and "the officer had received no information about [appellant]"); see Riley v. Commonwealth, 13 Va. App. 494, 495-96, 412 S.E.2d 724, 725 (1992) (we considered the fact that the officer never saw appellant holding any narcotics in finding a lack of reasonable articulable suspicion).

Middlebrooks' behavior, such as stating his vehicle was "his people's" and "milling around" the vehicle in a McDonald's parking lot, did not indicate he was engaged in criminal activity. McCain, 275 Va. at 553, 659 S.E.2d at 516 (Supreme Court did not find appellant's actions suspicious when, in the early morning hours, he exited a parked vehicle, walked up to a house known for drug dealing, and returned to the vehicle less than a minute later); Smith, 12 Va. App. at 1102, 407 S.E.2d at 51 (holding appellant's behavior did not indicate he was involved in criminal activity when an officer saw him at 10:00 p.m., on a playground with a

- 8 -

reputation for drug activity, shove something down the front of his pants upon the officer's approach).

Additionally, the evidence disclosed that Middlebrooks was seized in the early morning hours, in a parking lot known for drug-related arrests, and the parking lot was located in a high crime area. While Middlebrooks' presence in a high crime area was one factor the officers could consider, it "'does not objectively lend any sinister connotation to facts that are innocent on their face.'" Riley, 13 Va. App. at 498, 412 S.E.2d at 727 (quoting Smith v. United States, 558 A.2d 312, 316 (D.C. App. 1989)). The presence of a person, in the early morning, at a location with a reputation for drugs, "cannot serve to impute criminal activity to [that] person by virtue of that person's presence in the area." Id. at 498, 412 S.E.2d at 726 (citing Brown, 443 U.S. at 52; Sibron v. New York, 392 U.S. 40, 62 (1968)); McCain, 275 Va. at 553, 659 S.E.2d at 516 ("A person's Fourth Amendment rights are not lessened simply because he or she happens to live or travel in a 'high crime' area."). The fact that Middlebrooks was stopped by police "in a high crime area, *standing alone*, does not provide the requisite degree of suspicion to justify an investigatory stop." Brown v. Commonwealth, 15 Va. App. 232, 235 n.1, 421 S.E.2d 911, 913 n.1 (1992) (citing Riley, 13 Va. App. at 498, 412 S.E.2d at 726; Smith, 12 Va. App. at 1104, 407 S.E.2d at 52; Goodwin v. Commonwealth, 11 Va. App. 363, 367, 398 S.E.2d 690, 692 (1992)) (emphasis added). Therefore, the officers' seizure and subsequent search of Middlebrooks and his vehicle was conducted in violation of the Fourth Amendment due to the lack of a reasonable and articulable suspicion.

The Commonwealth argues that even if the police officers' initial seizure of Middlebrooks was invalid, it was cured prior to the search by Middlebrooks' voluntary admission that narcotics were in his vehicle. Assuming arguendo that Middlebrooks' admission was not coerced, the subsequent search was still conducted in violation of the Fourth

Amendment because the admission was a fruit of his illegal seizure.  See Hart v. Commonwealth, 221 Va. 283, 286-89, 269 S.E.2d 806, 808-10 (1990) (Commonwealth failed to carry its burden to show that appellant's confession was not a fruit of the prior illegal search and seizure); see also Watson v. Commonwealth, 19 Va. App. 659, 665-66, 454 S.E.2d 358, 362 (1995).

### III.  CONCLUSION

When Sergeant Dimitry told Middlebrooks his plan to call in a drug dog, a reasonable person would have felt compelled to stay and, thus, Middlebrooks' further detention was non-consensual.  Due to the officers' lack of a reasonable and articulable suspicion that Middlebrooks was engaged in criminal activity, Middlebrooks' seizure and the ensuing search were invalid under the Fourth Amendment.  Thus, any evidence obtained by the officers should have been suppressed.  Accordingly, we reverse Middlebrooks' conviction for possession of marijuana with intent to distribute and remand for the purpose of allowing Middlebrooks to withdraw his plea of guilty if he is so inclined and for further proceedings consistent with this opinion by the Commonwealth if they are so advised.

Reversed and remanded.